**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0145n.06**
**Filed: February 18, 2009**

**No. 08-5302**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT LEWIS BAAR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JEFFERSON COUNTY BOARD OF | ) | WESTERN DISTRICT OF KENTUCKY |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MERRITT, COLE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Robert Baar contends that the district court erred in rejecting his due process and First Amendment claims as a matter of law. We affirm in part and reverse in part.

I.

On February 7, 2002, Baar, a public-school teacher in Jefferson County, Kentucky, sent a letter to one of his colleagues, Missy Payne, which spoke of increasing "danger" to Payne and her family. Payne had received several "inappropriate letters" from Baar before, JA 60, so she told the principal about this one. On February 8, after conferring with the Jefferson County Board of Education, the principal held a meeting with Baar, where Baar agreed to sign a "Memorandum of Understanding" requiring him "to discontinue communication in any form, verbal or written, with

Missy Payne," JA 46. In June 2002, after further investigation, the principal issued a written reprimand to Baar for his repeated "inappropriate communications" with Payne. JA 60. The reprimand informed Baar that he would be transferred to another school and reiterated that he should have "no further contact with Ms. Payne or her family." JA 60.

In response, Baar filed a grievance against the school board, which the board and the teachers' union eventually settled. While the settlement agreement required the board to remove the June 2002 written reprimand from Baar's personnel file, it said nothing about the February 2002 "Memorandum of Understanding." Baar soon began teaching at another Jefferson County high school.

For some time, it looked like the problem had been resolved. In September 2005, however, Baar sent Payne the following email: "Count me in for the LACA meeting on the 29th. I will bring the money for the dues to the meeting. Bob." JA 55. LACA stands for the "Louisville Area Chemistry Alliance," a professional organization of chemistry teachers that Baar cofounded, and one in which he actively participated from 1992 to 2001 but had no involvement after 2001. As Baar explained it, he sent the email because he wanted to attend an upcoming LACA meeting and because Payne was listed as the RSVP-contact person.

The email led to more discipline. In December 2005, the principal issued Baar a written reprimand, which: (1) disciplined him for violating the February 2002 "Memorandum of Understanding"; (2) instructed him not to communicate with Payne "in any form or fashion"; and

(3) prohibited him from "represent[ing] . . . the Jefferson County Public Schools at any [LACA] meeting." JA 50. The third restriction, the parties agree, permanently prohibits Baar from attending any future LACA meetings.

In February 2006, Baar filed this lawsuit in federal court against Payne, the Jefferson County Board of Education, the superintendent, two other school-board officials and two principals (all told, the "school board"). Seeking relief under 42 U.S.C. §§ 1983 and 1985, he claimed (as relevant here) that the school board had violated his due process and First Amendment rights. The school board moved for summary judgment on all of Baar's claims, and the district court granted the motion.

## II.

We give fresh review to the district court's summary-judgment decision, drawing all reasonable inferences in Baar's favor. *See Med. Mut. of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 389 (6th Cir. 2008).

## A.

To establish a cognizable retaliation claim under the First (and Fourteenth) Amendment, Baar must demonstrate that he "engaged in constitutionally protected speech," that he "was subjected to adverse action or was deprived of some benefit," and that "the protected speech was a substantial or a motivating factor in the adverse action." *Leary v. Daeschner* (*Leary II*), 349 F.3d 888, 897 (6th Cir. 2003) (internal quotation marks omitted). All that matters here is the first question: Was the

speech protected? To show that it was, Baar must establish that: (1) his speech was not made in connection with his "official duties" as a school teacher, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); (2) it touches on "a matter of public concern," *Connick v. Myers*, 461 U.S. 138, 146 (1983); and (3) Baar's interests in the speech outweigh the school board's interests in promoting "the effective and efficient fulfillment of its responsibilities to the public," *id.* at 150.

*Reprimand for September 2005 email.* Baar first claims that the district court erred when it rejected his claim that the First Amendment prohibited the school board from reprimanding him for sending the September 2005 email. We disagree. The substance of the email—that Baar was planning to attend an upcoming LACA meeting and would bring his dues to the meeting—does not pertain to "a subject of legitimate news interest" or "a subject of general interest and of value and concern to the public," the touchstones of the matter-of-public-concern test. *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) (per curiam). Absent protected speech, the First Amendment does not empower a public employee to "constitutionalize the employee grievance," even if (as may be the case here) the communication is important to the employee. *Garcetti*, 547 U.S. at 420 (internal quotation marks omitted); *see also Connick*, 461 U.S. at 146–47.

*Prohibition on communicating with Payne.* The school board also did not abridge Baar's First Amendment rights by prohibiting him from communicating with Payne in the future. In reality, this claim is more in the nature of a prior restraint on speech, as opposed to a retaliation claim, because Baar is complaining about future restrictions on his free-speech rights, not a retaliatory change in the terms of his employment. Even so, the same test applies, so long as the restriction is

narrow, imposed on an individual employee (as opposed to many employees) and imposed via a disciplinary action. *Compare Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 2004), *Belcher v. City of McAlester*, 324 F.3d 1203, 1206 n.3 (10th Cir. 2003), *and Latino Officers Ass'n v. City of New York*, 196 F.3d 458, 464 (2d. Cir. 1999), *with United States v. Nat'l Treasury Employees Union (NTEU)*, 513 U.S. 454, 467–68 (1995).

Most of Baar's prior communications with Payne concerned private matters—of interest to the two of them and to them alone. And he has expressed no interest in communicating with Payne on matters of public concern in the future—indeed, he disclaims any interest in speaking to her again. Even if we assume for the sake of argument the possibility that he may wish one day to speak to Payne about a matter of public interest, he cannot overcome *Pickering* balancing. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The record shows Baar's interest in such speech to be slight; it must be if Baar has no further interest in it. The school board's interests, by contrast, are of a high order: Baar's inappropriate communications with Payne deeply "upset[]" and "disturb[ed]" her, JA 187, creating a personnel situation that "impair[ed] . . . harmony among coworkers, ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence [were] necessary, [and] . . . interfere[d] with the regular operation of the [school]," *Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *see also Leary II*, 349 F.3d at 900. The school board above all has a critical interest in protecting its employees from harassment. *See Rankin*, 483 U.S. at 388. Had the school board looked the other way in dealing with Payne's complaints, it would have taken on the risk of exposing itself to liability for a hostile work environment. *See Burlington Indus., Inc.*

*v. Ellerth*, 524 U.S. 742, 764–65 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807–808 (1998); *see also Crawford v. Metro. Gov't of Nashville and Davidson County*, ___ U.S. ___, 129 S. Ct. 846, 852 (2009) ("Employers are . . . subject to a strong inducement to ferret out and put a stop to any discriminatory activity in their operations as a way to break the circuit of imputed liability.").

The school board's speech restriction also applies only to communications with Payne, permitting Baar to speak freely on *any matter* of public interest to *anyone else* in *any forum* he wishes, and thus deals with the underlying harassment problem in the most natural and narrow way possible: by barring Baar from speaking directly to Payne. The school board in the end struck an appropriate balance between its interests in maintaining an orderly, harassment-free workplace on the one hand and Baar's interest in speaking as a citizen on matters of public concern on the other. *See Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003); *Farhat*, 370 F.3d at 598.

*Prohibition on Baar attending any future LACA meetings*. The school board's ban on Baar's attendance at all future LACA meetings is another matter. Here we have a direct restriction not on what Baar can say but on whom he can associate with—and apparently for all time. Although the same framework governs freedom-of-association and free-speech claims, *see Akers*, 352 F.3d at 1036; *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985), the breadth and timeless nature of this restriction permits Baar to take this claim to a jury.

Baar's association with LACA involves a matter of public concern. LACA is "an independent group of science teachers from private schools, public schools, [and] parochial schools,"

JA 202, and its stated goal is the improvement of science education in the schools, something that is "a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego*, 543 U.S. at 84; *see also Leary v. Daeschner (Leary I)*, 228 F.3d 729, 737 (6th Cir. 2000) ("The subject[] of . . . the appropriate educational program to be implemented [is] undoubtedly [a] matter[] of concern to the community at large."). The services provided by LACA—holding professional-development classes, developing safety protocols for in-classroom lab experiments and providing a forum to discuss the science curriculum, textbooks, lesson plans, effective teaching techniques and ways to improve science education—have value not only to chemistry teachers (such as Baar) but to the general public as well.

It may be true, as the school board points out, that LACA is not devoted to criticizing the school board's implementation of the science curriculum or to bringing to light official wrongdoing. But while speech that attacks policy decisions or that exposes public malfeasance represent quintessential "examples of speech that would involve matters of public concern," *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 182 (6th Cir. 2008), they do not make up the universe of protected speech. Also included is speech on "issues of community importance," *Leary II*, 349 F.3d at 900, that can "be fairly considered as relating to [a] matter of political, social or other concern to the community," *Connick*, 461 U.S. at 146.

At this stage of the case, the claim also satisfies *Pickering* balancing. Baar has a substantial interest in participating in LACA, a group he cofounded, one he regularly attended in the past and one designed for the professional development of chemistry teachers like him. The organization

provides an opportunity for Baar to network with other chemistry teachers, to learn how he can do his job more effectively and to change science education for the better.

The school board, we appreciate, also has a substantial interest in curbing Baar's improper communications with Payne, which ran the risk of compromising the school board's ability to deliver a valuable education in an harassment-free work environment. What tips the balance in Baar's favor is the breadth of the school board's prohibition. The December 2005 directive prohibits Baar from attending *any* LACA meeting for *all* time, no matter the purpose of the meeting, no matter whether Baar plans to talk to Payne there, no matter indeed whether Payne plans to attend the meeting or for that matter remains a teacher in the Louisville area. Nothing about Baar's past problems concerns his association with LACA. It is Baar's communications with Payne, not Baar's association with LACA, that threaten to "undermine a legitimate goal or mission" of the school board or "create disharmony among co-workers." *Rodgers v. Banks*, 344 F.3d 587, 601 (6th Cir. 2003) (internal quotation marks omitted).

No doubt, a prohibition on Baar's involvement with LACA is one way to prevent Baar from communicating with Payne, but it is not the only way and it is not a way that comports with *Pickering*'s admonishment that public employers must balance their own interests with the First Amendment rights of their employees. Because the school board bears the burden of justifying broader restrictions on speech with ever-stronger State interests and because the school board has given no tenable explanation for such a sweeping and everlasting prohibition, it is not entitled to summary judgment on this claim. *See NTEU*, 513 U.S. at 466–68; *Nat'l Treasury Employees Union*

*v. United States*, 3 F.3d 1555, 1566 (D.C. Cir. 1993) (Silberman, J., dissenting from denial of rehearing en banc) ("The breadth, as well as the weight, of the governmental restriction is of course *relevant* to the *Pickering* analysis. When the government burdens substantially more speech than required by its asserted interest, then its asserted interest might not outweigh that greater burden. After all, the greater the burden on speech, *ceteris paribus*, the more the *Pickering* balance will point toward invalidation of the rule.") (internal quotation marks omitted).

*Other Claims*. Baar separately claims that the school board violated his First Amendment rights (1) when it issued the February 2002 "Memorandum of Understanding," which prohibited Baar from communicating with Payne, (2) when it signed the 2003 grievance settlement agreement, which allegedly hindered his rights to file future grievances and (3) when Payne apparently attempted to eject Baar from an academic competition in 2003. The relevant statute of limitations bars these claims.

A one-year statute of limitations prohibits Baar from recovering for any injury he knew about or had reason to know about before February 9, 2005, one year before the date on which he filed his complaint. *See Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007). And Baar has not disclaimed—at least not in any meaningful way—having ample reason to know about these incidents before February 9, 2005.

Nor can Baar sidestep this limitation by invoking the continuing-violation doctrine. In two "narrowly limited" categories of cases, the continuing-violation doctrine allows plaintiffs to recover

for injuries that occurred beyond the limitations period. *See Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992) (internal quotation marks omitted). The first category arises when the plaintiff alleges a "prior discriminatory activity that continues into the present," *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003), a good example of which is a hostile-work-environment claim that is "based on the cumulative effect of individual acts," *National R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 115 (2002), and that manifests itself over time, not at any one moment. The second category arises when the plaintiff can show "a long-standing and demonstrable policy of discrimination" against a class of which the plaintiff is a member. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (internal quotation marks omitted).

Trying to fit his claims into the first category, Baar points out that these three claims are similar to those that occurred within the limitations period. But just because discrete constitutional claims are related to one another—in terms of the parties involved, the nature of the underlying conflict and the theory of relief—does not mean that the limitations period is suspended for all of the claims so long as just one of them occurred within the limitations period. As the Supreme Court has cautioned in the Title VII context, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete discriminatory act starts a new clock for filing charges." *Morgan*, 536 U.S. at 113. We have applied this same doctrine to § 1983 actions, holding that claimants are "precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." S*ee*

*Sharpe*, 319 F.3d at 268. Our sister circuits have done the same. *See O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006); *Hildebrandt v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002). These three First Amendment claims are time-barred.

B.

Baar next argues that the district court erred in rejecting his due process claim as a matter of law. To prevail, Baar must show that (1) he had a cognizable property interest, (2) the school board infringed that interest and (3) the school board did not give him the process he was due. *See Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009).

Although Baar's pleadings are short on specifics, the district court identified the following potential property interests: his income ($5000 a year) from "planning and directing various professional development courses," JA 117 (internal quotation marks omitted); his work in judging academic competitions; and the collective bargaining agreement's prohibition on discipline without just case.

Baar, for starters, does not have a cognizable property interest in professional-development income or in judging academic competitions. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks omitted). He must have "a legitimate claim of *entitlement*" to the benefit, deriving from "existing rules or

understandings that stem from an independent source such as state law." *Id*. (internal quotation marks omitted) (emphasis added). Baar has not identified any contract, statute, rule or other independent source that creates an entitlement to these benefits, and thus they do not rise to the level of "property" protected by due process.

Baar does have a property interest in the just-cause discipline requirement, however. The collective bargaining agreement says that "[n]o employee . . . shall be disciplined . . . without just cause," Agreed Filing of Hr'g Ex. at 20, and employees have a property interest in such requirements, *see, e.g.*, *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587 (6th Cir. 2004).

Yet even if we assume that the school board short-changed that property interest and even if we overlook Baar's failure to take advantage of the agreement's grievance procedures, *see Bowers v. City of Flint*, 325 F.3d 758, 762 (6th Cir. 2003), Baar still received all of the process to which the Constitution entitles him. Before the December 2005 reprimand, the school board gave Baar written notice of the charges against him. It conducted an investigation of Payne's complaint, and it gave Baar an opportunity (with a union representative at his side) to review the findings from the investigation. It gave Baar a chance to respond orally to the findings, and in writing, which he did through a letter submitted by the union. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (noting the "essential" value of "notice" and an "opportunity for a hearing") (internal quotation marks omitted).

While these predeprivation proceedings were not elaborate, they did not have to be—if the school board also provided meaningful postdeprivation process. *See Jefferson*, 360 F.3d at 587; *see also Zinermon v. Burch*, 494 U.S. 113, 128 (1990). And it did. The collective-bargaining agreement provides for at least three layers of review of a grievance, beginning with meetings with the employee's immediate supervisor and principal, continuing to a full hearing before the school superintendent and culminating with a hearing before a neutral arbitrator. These procedures are comprehensive and adequate, as proved by our decision to uphold nearly identical procedures in another case involving the Jefferson County Board of Education. *See Jefferson*, 360 F.3d at 587–89.

Baar does not challenge the adequacy of these procedural protections. He instead argues that he could not use them because the union refused to represent him in the grievance process. But union representation is not a prerequisite for filing a grievance under the collective-bargaining agreement, which allowed Baar to file a grievance on his own if he wished. To the extent Baar complains that the agreement required union approval before the *third* layer of review before a neutral arbitrator—something by no means clear from the text of the agreement—his complaint targets not the adequacy of the process provided by the school board but the adequacy of the union's representation of him, which is another matter. *See, e.g.*, *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 81 (1989).

Baar also takes a shot at several incidents that occurred prior to February 9, 2005: (1) he was not afforded notice of or representation at the February 8, 2002 meeting between Baar, his school principal and a school-board official; (2) he was forced to sign the 2002 Memorandum of

Understanding under threat of termination; (3) he was forced to undergo a psychological evaluation in 2002; (4) he was placed on non-teaching status during the 2002 investigation; (5) he was disciplined without just cause in the June 2002 written reprimand; and (6) he was transferred to another school following the written reprimand.

For the same reasons that the one-year statute of limitations bars some of his free speech claims, it bars these due process claims. As before, each of these claims turns on a discrete, separately identifiable constitutional injury, and the continuing-violation doctrine therefore does not apply.

C.

Baar separately seeks due-process relief on the ground that the school board deprived him of a protected liberty interest in his "good name, reputation, honor, or integrity." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). To obtain relief, Baar must show that (1) the school board made stigmatizing statements about him in connection with a change in his employment status, *Quinn v. Shirey*, 293 F.3d 315, 319–20 (6th Cir. 2002), (2) the statements so "seriously damage[d] his standing and associations in his community" as to impose on him a stigma that "foreclose[d] his freedom to take advantage of other employment opportunities," *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997) (internal quotation marks omitted), (3) the statements were publicly disclosed, *id.*, (4) they were false, *id.*, and (5) the school board voluntarily disseminated them to the public, *id.* The claimant also must "show that he requested a name-clearing hearing and

was denied that hearing." *Quinn*, 293 F.3d at 322. "[A] plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Id*. at 323.

The first problem with this claim is that Baar never requested a name-clearing hearing. He does not allege otherwise, and accordingly this claim fails for that reason alone.

The second problem is that the targeted statements—in the December 2005 written reprimand—are not so charged with a "moral stigma such as immorality or dishonesty" that they foreclose Baar from taking advantage of other employment opportunities. *Ludwig*, 123 F.3d at 410. The 2005 written reprimand disciplined Baar for failing to follow a personnel directive and contained no accusation of immorality or dishonesty. No evidence indicates that, as a result of the reprimand, a "range of opportunities is no longer open" to Baar, *Garvie v. Jackson*, 845 F.2d 647, 652 (6th Cir. 1998) (internal quotation marks omitted), and indeed to this day Baar continues to work as a teacher in the Jefferson County schools.

D.

Baar's substantive due process claim, premised on a right to privacy, fares no better. To the extent it turns on Payne's alleged disclosure of the two-page letter Baar sent her in February 2002 or the five-page email Baar sent her in October 2001, those claims are time-barred, as we have explained. To the extent Baar alleges that Payne violated his right to privacy by disclosing the email Baar wrote her in September 2005, that claim founders on its own terms. Absent a special duty, one who communicates a message to another takes the risk that the recipient will disclose the message

to others. *Smith v. Cincinnati Post & Times-Star*, 474 F.2d 740, 741 (6th Cir. 1973). "[N]o violation of the right of privacy" occurred. *Id.*

E.

Baar also claims that the defendants conspired to violate his constitutional rights. *See* 42 U.S.C. § 1985. Yet, as the district court correctly concluded, all of the defendants were part of the same collective entity—the Jefferson County Board of Education—and thus there were "not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (affirming the grant of summary judgment on a § 1985 claim because the plaintiff alleged a conspiracy between "a school superintendent, the executive director of the district, and a school administrator, all of whom were employees or agents of the [school] [b]oard,"). Having failed to challenge this aspect of the district court's decision, he must live with it. *See Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004); *see also Leary v. Livingston County*, 528 F.3d 438, 449 (6th Cir. 2008).

III.

For these reasons, we affirm in part, reverse in part and remand for further proceedings.