IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2011 Session

# LEONORA WASHINGTON v. GALE VOGEL, PH.D., ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 56880      Robert E. Corlew III, Chancellor**

**No. M2010-02461-COA-R3-CV - Filed July 20, 2011**

Teacher who received a reprimand brought this action to challenge the actions of school officials and the school board. She argues that the school failed to provide due process to her and defamed her. The trial court found in favor of the defendants, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Kerry Knox and Thomas H. Castelli, Murfreesboro, Tennessee, for the appellant, Leonora Washington.

Anthony Michael Noel, Nashville, Tennessee, for the appellees, Gale Vogel, Ph.D., Harry Gill, Rutherford County Board of Education, and Rutherford County, Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The Rutherford County Board of Education hired Leonora Washington as a teacher in 1972, and she has taught first grade at Smyrna Primary School since that time. On March 29, 2007, Ms. Washington was speaking to a child in the lunch room about his conduct, and her purse slipped off of her arm and struck the child's leg. Another student reported to an educational assistant that Ms. Washington had struck the child with her purse; the educational assistant informed the child's teacher, Ms. Shea Williams. Ms. Williams discussed the incident with the child and then met with the principal, Gale Vogel, about the matter.

Ms. Williams and Dr. Vogel met with the child and then with four other students, the lunch monitor, and the educational assistant. The child's parents were contacted and came to the school to discuss the incident with Dr. Vogel. Based upon the parents' examination of the child's leg, Dr. Vogel contacted the Department of Children's Services to report possible child abuse. Dr. Vogel also informed Paula Barnes, a human resources officer, and Angel McCloud, attorney for the board of education. The next day, Ms. Barnes and Ms. McCloud went to the school to investigate. They informed Ms. Washington that she had been accused of assaulting the child; Ms. Washington explained that she had not intentionally struck the child.

Upon leaving the interview with Ms. Barnes and Ms. McCloud, Ms. Washington went to the child's classroom. The child was not in the classroom at the time. The parties disagree as to exactly what transpired in the classroom. Ms. Washington alleges that she went to the classroom to apologize to the child and to speak to the child's teacher about the incident. The defendants assert that Ms. Washington explained her side of the story to the students and had at least one student hold her purse to see how heavy it was. The child's teacher, Ms. Williams, immediately reported Ms. Washington's visit to the classroom to Dr. Vogel, who instructed her to talk to Ms. McCloud.

On April 2, 2007, Dr. Vogel sent a memorandum to the central office with a summary of her investigation of the matter. According to this report, Dr. Vogel informed Ms. Williams and Carla Sartin, the special education resource teacher, that there should be no contact between the child and Ms. Washington. An educational assistant was to be assigned to sit with the child at lunch. All special area teachers were to be informed that there should be no contact between the child and Ms. Washington.

Harry Gill, the director of schools, sent Ms. Washington a letter dated April 2, 2007, in which he concluded that she "did not intentionally hit the student with your purse." He went on, however, to address her visit to the child's classroom:

> [T]his morning it was brought to my attention that after meeting with the complaint managers [Ms. Barnes and Ms. McCloud] on the morning of March 30, 2007, you went to Ms. Williams' classroom and began addressing the class about good manners in the cafeteria. You then proceeded to have several students hold your purse to determine if it was heavy. You inquired about the whereabouts of the specific child who had lodged the complaint against you and exited the classroom by telling the students that they knew you didn't hit kids.

The complaint lodged against you was filed pursuant to the provisions of Board policy 5-12. The policy states that there shall be no retaliation against any person who reports harassment or bullying/intimidation or participates in the investigation. Your actions on the morning of March 30, 2007 are a direct violation of this policy. Violations of board policy constitute insubordination under Tennessee Code Annotated Section 49-5-501 and may be cause for disciplinary action up to and including termination. This letter is to serve as a formal reprimand and a copy will be placed in your personnel file. This is a serious violation of board policy and any future acts of this type will result in further disciplinary action. You are directed to have no further contact with anyone involved in the complaint investigation.

Ms. Washington submitted a written statement in rebuttal to the reprimand. No one had spoken to her about the allegation of retaliation before she received the notice of reprimand. Ms. Washington requested a meeting with Mr. Gill to discuss removal of the reprimand from her personnel file. Mr. Gill did not attend the meeting, which occurred on June 11, 2007; Ms. Barnes and Ms. McCloud met with Ms. Washington and they relayed her request to Mr. Gill. The reprimand was not removed from Ms. Washington's personnel file.

On August 21, 2007, Ms. Washington filed a formal complaint against Mr. Gill alleging that he and others had failed to afford her due process in giving her a reprimand for violating Rutherford County Board of Education Policy 5-12. In a response dated August 27, 2007, Ms. McCloud informed Ms. Washington that Ms. McCloud had been appointed Mr. Gill's designee for purposes of investigating her complaint. Ms. McCloud's findings include the following:

At the conclusion of the investigation [of the original complaint against Ms. Washington] the Director of Schools received credible information, in the form of a written statement, indicating that after leaving the interview with the complaint managers regarding the student complaint, Ms. Washington went to the student's classroom and began addressing the class regarding the content of the complaint. The report stated Ms. Washington had at least two students hold her purse and asked them if it was heavy. She asked where the student (who was the subject of the complaint) was that morning and the teacher told her he was in another classroom. The report also indicated as Ms. Washington left the classroom she stated, "ya'll know I don't hit kids". This incident was reported to the principal and the complaint managers immediately.

The Director of Schools determined the incident violated the retaliation portion of Board Policy 5-12 . . . . Based upon the Director of School's determination

-3-

Ms. Washington's actions violated the policy he issued a formal reprimand to be placed in her personnel file.

At the end of the memorandum, Ms. McCloud reached the following conclusions regarding Mr. Gill's actions: "Based upon the investigation I have determined there has been no violation of Board policy or state or federal law."

Ms. Washington appealed her complaint to the Rutherford County Board of Education, which declined to hold a hearing and denied her appeal based upon the findings of Ms. McCloud.

On March 28, 2008, Ms. Washington filed this action against Dr. Vogel, Harry Gill, Rutherford County Board of Education, and Rutherford County. She asserted causes of action for denial of due process and defamation. The defendants answered the complaint, and the parties engaged in discovery. The defendants filed a motion for summary judgment on January 7, 2010. The trial court initially granted the defendants' motion as to the defamation claim only. The defendants filed a motion to reconsider or amend the court's ruling, and on November 5, 2010, the court granted the motion for summary judgment with respect to the remaining claim.

On appeal, Ms. Washington asserts that the trial court erred in granting the defendants summary judgment on her due process claim and her defamation claim.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *Bell South Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008).

-4-

We begin by emphasizing that this case was brought for due process violations and defamation. There is no challenge to the validity of the school board policy.

I.

To prevail on a due process violation, a claimant must establish that (1) she had a cognizable life, liberty, or property interest, (2) she was deprived of that interest, and (3) she was not afforded adequate procedural rights prior to the deprivation. *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6ᵗʰ Cir. 2009). Ms. Washington's essential argument is that she held a cognizable property interest in her personnel record that was infringed by the reprimand.

While we are not unsympathetic to Ms. Washington's sense of unfairness in the fact that she was not consulted prior to issuance of the reprimand, we know of no authority by which she has a property interest in her personnel record. To have a constitutionally protected property interest in a benefit, a person must have a "legitimate claim of entitlement" to the benefit that is derived from an independent source, such as state law. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Baar v. Jefferson County Bd. of Educ.*, 311 Fed. Appx. 817, 824 (6ᵗʰ Cir. 2009). As the Supreme Court has stated, the Constitution does not create property interests; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

A property interest can be created by contract. *Baar*, 311 Fed. Appx. at 825. In *Baar*, a public school teacher received a reprimand disciplining him for violating a memorandum of understanding, instructing him not to communicate with the contact person for a certain professional organization, and prohibiting him from representing the schools at future meetings of a professional organization. *Id.* at 820. The court determined that Baar did not have a cognizable property interest in income from professional development activities or in judging academic competitions. *Id.* at 824. The court went on to find that Baar did have a property interest in a requirement of no discipline without just cause, a right created by the teachers' collective bargaining agreement. *Id.* at 825.

In the present case, however, the education agreement in effect at the time of the issuance of a reprimand to Ms. Washington did not give her due process rights with respect to the issuance of a reprimand. The pertinent language in the 2005-2008 Education Agreement provides as follows:

It is the duty of the Board when dismissing teachers, principals, supervisors, and other employees, upon sufficient proof of improper conduct, inefficient service, or neglect of duty to first give in writing due notice of the charge or charges and provide an opportunity to come before the Board at the regularly scheduled Board meeting and present their defense.

If the Board had decided to dismiss Ms. Washington, she would have been entitled to notice and an opportunity to be heard prior to such a deprivation. The only discipline given to Ms. Washington was a letter of reprimand in her personnel file. She did not lose her job or suffer a decrease in salary or a demotion of any kind. *See Sullivan v. Brown*, 544 F.2d 279, 282 (6th Cir. 1976) (transfer of tenured teacher based upon allegations in a written reprimand placed in her personnel file did not amount to deprivation of a constitutionally protected property interest under Tennessee's laws).

Ms. Washington argues that Policy 5-12, the policy under which she was disciplined, guaranteed her a right to due process. Policy 5-12 generally prohibits discrimination and harassment, as well as bullying and intimidation of students. Ms. Washington was disciplined under a portion of the policy prohibiting "retaliation against any person who reports harassment or bullying/intimidation or participates in an investigation." To support her alleged entitlement to due process, Ms. Washington cites the highlighted portions of the following provisions concerning confidentiality:

The privacy and anonymity of all parties and witnesses to complaints will be respected. However, *because an individual's need for confidentiality must be balanced with obligations to cooperate with police investigations or legal proceedings, to provide due process to the accused, to conduct a thorough investigation or to take necessary action to resolve a complaint, the identity of parties and witnesses may be disclosed in appropriate circumstances to individuals with a need to know.*

(Emphasis added). The purpose of these provisions is to explain the limits of confidentiality. They do not provide for a blanket right to due process for any teacher alleged to have violated the policy, regardless of the type of discipline used.

Ms. Washington further cites the procedures set out in Policy 5-12 for filing and investigating complaints of bullying or discrimination. These procedures, however, relate mainly to persons filing complaints and the investigation of such complaints. The policy provides for an investigation by complaint managers, who shall review the initial complaint and the principal's report of preliminary findings. The complaint managers decide whether further investigation is warranted. In the event of further investigation, the complaint

-6-

managers are to notify the complaining student's parents and the superintendent, who is to render a decision within five school days of receipt of the complaint managers' report. Appeal is to the board of education, which shall review the actions of the superintendent and report its decision to the complainant. The policy specifically states that the "complaint procedure shall not be construed to create an independent right to a Board hearing." These procedural provisions do not afford any particular rights to persons alleged to have violated the policy, and we must conclude that they do not create a constitutionally protected property interest as argued by Ms. Washington.

Having found no constitutionally protected property interest, we conclude that Ms. Washington's due process claim must fail.[1] We agree with the trial court's conclusion that, under the education agreement in effect at the time, "it appears that [Ms. Washington] did not enjoy a property right which would require the employer to afford Due Process rights to the Plaintiff."[2]

## II.

An essential element of defamation is that the defendant published a statement. *Sullivan v. Baptist Mem'l Hosp.,* 995 S.W.2d 569, 571 (Tenn. 1999). In the context of defamation, "publication" is a term of art meaning "the communication of defamatory matter to a third person." *Id.* A claim for defamation requires proof that "the defendant communicated a false and defamatory statement to the person of another, and that as a result thereof the plaintiffs suffered actual damages." *Shipley v. Tenn. Farmers Mut. Ins. Co.*, No. 01-A-01-9011CV00408, 1991 WL 77540, at *5 (Tenn. Ct. App. May 15, 1991) (citing *Emerson v. Garner,* 732 S.W.2d 613, 617 (Tenn. Ct. App. 1987)).

Ms. Washington alleges three instances of publication: 1) oral notification (by the principal to Ms. Williams and Ms. Sartin and by an unnamed school employee to the education assistant assigned to eat lunch with the student) to the effect that there should be no contact between the student and Ms. Washington; 2) a "written policy" communicated to special education teachers intimating that Ms. Washington posed a threat to the student; and

---

[1]Having reviewed the entire record in this case, we observe that this lawsuit might well never have been brought had Ms. Washington been treated in a manner more consistent with her more than 30 years of teaching at the school–i.e., if she had been afforded the opportunity to explain her side of the incidents in question to a decisionmaker, rather than to the same designee who had conducted the initial investigation.

[2]The trial court noted that the current education agreement "appears to afford Due Process Rights to tenured teachers before a reprimand is issued."

3) publication to the public through the board of education and the newspaper when Ms. Washington appealed the reprimand to the board of education.

As to the oral notifications, Tenn. Code Ann. § 28-3-103 requires that "[a]ctions for slanderous words spoken shall be commenced within six (6) months after the words are uttered." In this case, the alleged defamatory words were uttered in late March or early April of 2007. Ms. Washington did not file her lawsuit until March 28, 2008, almost a full year later. Thus, any defamation claim based upon those oral statements is barred by the statute of limitations.

Ms. Washington also cites a "written policy that was communicated to all special area teachers which intimated that Plaintiff posed some danger or threat to the student." At oral argument, counsel for Ms. Washington described a memorandum circulated among school staff instructing them to keep the student away from Ms. Washington. The defendants assert that no such memorandum was circulated. Even if we assume the existence of such a memorandum, we do not consider its circulation among special education teachers to constitute publication. This court has previously held that communications "among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons." *Woods v. Helmi*, 758 S.W.2d 219, 223 (Tenn. Ct. App. 1988) (citing *Freeman v. Dayton Scale Co.*, 19 S.W.2d 255, 257 (Tenn. 1929)). In *Woods*, the court emphasized a "need to know" concept–i.e. that communication flowing through the proper chain of command does not qualify as publication. *Id.*; *see also Evans v. Amcash Mortgage Co., Inc.*, No. 01A01-9608-CV-00386, 1997 WL 431187, at *5 (Tenn. Ct. App. Aug. 1, 1997).

The third allegation concerns newspaper articles about the reprimand and Ms. Washington's complaint against Mr. Gill. Because Ms. Washington chose to appeal her reprimand to the board of education, the related information became a matter of public record. We know of no authority under which the school system can be held responsible for the media's dissemination of public information.

We must conclude that the trial court acted properly in dismissing Ms. Washington's defamation claim at the summary judgment stage.

CONCLUSION

We affirm the trial court's decision. Costs of appeal are assessed against Ms. Washington, for which execution may issue if necessary.

_____

ANDY D. BENNETT, JUDGE