DISSENT
MERRITT, Circuit Judge,
dissenting with respect to Part II.B.2.
This case needs to be tried, not disposed of on the pleadings. The plaintiff, we must assume, was greatly harmed by the defendants’ accusations of dishonesty when he was removed as head of a university department and his pay significantly reduced as a result. He also claims he was greatly harmed by anonymous falsehoods that he was given no opportunity to rebut. Our case law should, and does, protect state employees from career-destroying defamation without an opportunity for a due process hearing that allows them to defend their reputations. I, therefore, do not agree with the majority’s holding that Crosby has failed to allege a deprivation of his liberty interest in his good name and reputation sufficient to survive a motion to dismiss. Because I would hold that Crosby has made out a claim under § 1983 for deprivation of his liberty interest and that the defendants are not protected by the doctrine of qualified immunity, I would remand the case to the district court for further proceedings on that claim.
Federal courts have long held that the Fourteenth Amendment secures the individual’s right to due process when a state employer deprives a state employee of his protected liberty interest in his “good name, reputation, honor, or integrity” in connection with “[s]ome alteration of a right or status ‘previously recognized by state law.’ ” Paul v. Davis, 424 U.S. 693, 708, 711-12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Quinn v. Shirey, 293 F.3d 315, 319 (6th Cir. 2002); Chilingirian v. Boris, 882 F.2d 200, 205 (6th Cir. 1989). In such a case, the Constitution requires the state to provide the employee with a name-clearing hearing if he requests one. Brown v. City of Niota, 214 F.3d 718, 723 (6th Cir. 2000).
Five factors are relevant to determine whether Crosby is able to state a claim for deprivation of his protected liberty interest in his good name and reputation:
First, the stigmatizing statements must be made in conjunction with the plaintiffs termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.
Quinn, 293 F.3d at 320 (quoting Brown, 214 F.3d at 722-23). In addition to satisfying each of those five factors, the plaintiff must also allege that he requested and was denied a name-clearing hearing. See id. “It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process.” Id.
I believe that Crosby has pleaded sufficient factual allegations to satisfy the Quinn standard for purposes of a motion to dismiss. Unlike the majority, I would hold that the allegations in Crosby’s complaint are sufficient to satisfy the first two Quinn factors—that is, that the statements at issue were made “in conjunction with the plaintiffs termination from employment” and that the alleged statements did more than accuse Crosby of “merely improper or inadequate performance, incompetence, neglect of duty or malfea- *560 sanee.”[1] Id. The majority’s decision to the contrary is the result of reliance on precedents that are not on point in this case.
The majority reads this court’s decision in Garvie v. Jackson, 845 F.2d 647 (6th Cir. 1988), as holding that a tenured professor removed from an administrative post is not “terminated” for purposes of a liberty interest claim so long as he remains a tenured professor at full salary. That interpretation mischaracterizes the panel’s reasoning in Garvie. Moreover, applying that supposed rule in this case requires the majority to view the facts in something short of the light most favorable to the plaintiff. In Garvie, this court rejected the liberty interest claim of a tenured professor who alleged that he was defamed in connection with the University of Tennessee’s decision not to renew his appointment as Head of the Department of Speech and Theatre. Id. at 649, 652. Contrary to the majority’s reasoning in this case, the panel in Garvie expressly found that the plaintiff had been “terminated as Department Head.” Id. at 652. Despite so finding, the Garvie panel rejected the plaintiffs liberty interest claim because he “continued to be employed by the University as a full-time, tenured professor at full salary” and, alternatively, because the plaintiff made “no showing that a definite range of opportunities [was] no longer open to him.” Id. (emphasis added) (internal quotation omitted).
Neither rationale .is applicable here. Crosby’s complaint alleges that the University reduced his pay by «$5,000 per year after removing him from his position as Chair.[2] Because Crosby alleges that he is no longer being paid his “full salary” for his services as Chairman, Garvie is not on point. And even if “full salary” means the salary, associated with Crosby’s service as a tenured professor, Crosby’s complaint also alleges that “a definite range of opportunities is no longer open to him” as a result of the defendants’ actions. Id. (internal quotation omitted). Specifically, the complaint states that several other schools of public health have removed him from consideration for several administrative positions following the University’s opaque and unfair investigation and Crosby’s subsequent removal as Chairman. Thus, neither of the facts relied upon in Garvie as sufficient to defeat the plaintiffs claim are present in this case. Rather, Garvie actually supports a finding that Crosby’s removal amounted to a “termination” for purposes of the first Quinn factor because his salary has been reduced and because he is no longer able to pursue his goal of serving as the deaq of a school of public health. We should not construe the due process standards in such a parsimonious way that the employee is given no opportunity to show how seriously his reputation and career have been harmed.
The majority also suggests that Crosby’s claim fails under the second Quinn factor because he is not foreclosed from serving as a professor. The proper inquiry is whether the employer’s statements' might “seriously damage his standing and, associations in his community” or “impose ‘on him a stigma or other disability that [would] foreclose[] his freedom to take advantage of other employment opportunities.’ ” Ludwig v. Bd. of Trustees, 123 F.3d 404, 410 (6th Cir. 1997) (quoting Bd. of *561 Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)) (alterations original). This standard is only met when the statements impose “[a] moral stigma such as immorality or dishonesty.” Id. This standard is disjunctive rather than conjunctive. Under Ludivig, a plaintiff satisfies the second Quinn factor when he or she alleges that the state, employer’s statements would tend to seriously damage his or her reputation in the relevant community. Id. Having made such a showing, there is no additional requirement that the plaintiff demonstrate that the remarks might “foreclose[] his [or her] freedom to take advantage of other employment opportunities.” Id. (“A moral stigma such as immorality or dishonesty is réquired to show a deprivation of liberty.”); see also Roth, 408 U.S. at 573, 92 S.Ct. 2701 (“For where a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.” (internal quotation omitted))'.
Crosby unquestionably meets that standard. Indeed, he alleges that the defendants sullied his professional reputation by accusing him of dishonesty, specifically. He also alleges that .the defendants accused him of lacking personal integrity, respect for human dignity, personal responsibility, accountability, mutual respect, impartiality, and ability to collaborate. Taken as a whole, those accusations amount to a scathing indictment of Crosby’s character that would damage any professional’s standing and associations in his community. That the remarks have “foreclosed [Crosby’s] freedom to take advantage of other employment opportunities” is established by the fact that their mere utterance has altogether removed Crosby from consideration for prestigious administrative positions at several other public health schools. Roth, 408 U.S. at 573, 92 S.Ct. 2701; see Siegert v. Gilley, 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (noting that remarks labeling a plaintiff as inept, unethical, and untrustworthy “would undoubtedly damage the reputation of one in his position, and impair his future employment prospects”). • .
The majority’s reliance on Crosby’s continued employment as a tenured professor at the University of Kentucky as support for its holding on the second Quinn factor is misplaced. The inquiry under the second Quinn factor focuses on the plaintiffs “chosen profession.” Joelson v. United States, 86 F.3d 1413, 1420 (6th Cir. 1996) (emphasis added). Despite the majority’s blithe conclusion that Crosby’s chosen profession is “being a professor,” we must accept Crosby’s consistent allegations that he has always had a different goal in mind: to become dean of a school of public health. Crosby has also' made particularized allegations regarding the actual effect of the defendants’ conduct on his applications for such positions at several peer institutions. The majority attempts to ground its reliance on Crosby’s continued employment as a tenured professor by citing to Baar v. Jefferson County Board of Education, 311 Fed.Appx. 817, 826 (6th Cir. 2009) (unpublished). That case involved a teacher who raised a liberty interest claim after receiving a written reprimand for violating an earlier agreement not to contact one of his colleagues. Id. at 819-20. We held that the teacher’s claim failed because: he failed to request a name-clearing hearing, not because he continued to be employed by the defendant school district. Id. at 826. The-.Barr panel’s dictum referring to the teacher’s continued employment by the defendant school district was relevant because—unlike. this case—the plaintiff had not alleged any career goals beyond his present teaching position. Id. at 826. Accordingly, Baar is not -relevant to the case before us today. *562 Crosby’s essential allegation on the second Quinn factor is that the defendants’ conduct has prevented him from pursuing his reasonable career goal of becoming dean of a school of public health. Indeed, he has made specific allegations about opportunities that he has lost as a result of the defendants’ actions. I would hold that Crosby’s allegations are more than sufficient to satisfy the second Quinn factor on a motion to dismiss.
Finally, I do not believe that the doctrine of qualified immunity protects the defendants in this case. The facts of this case are a textbook example of a scenario in which a state employer must afford a terminated employee a name-clearing hearing. As I discuss above, it has long been the law of this circuit that a state employee is due a name-clearing hearing upon request whenever the state employer makes statements indicting the employee’s honesty when it terminates the employee or otherwise changes his legal status. E.g., Paul, 424 U.S. at 711-12, 96 S.Ct. 1155; Constantineau, 400 U.S. at 437, 91 S.Ct. 507; Quinn, 293 F.3d at 319; Chilingirian, 882 F.2d at 205.
There can be no reasonable debate as to whether Crosby’s removal amounted to an “alteration of a right or status ‘previously recognized by state law.’ ” Quinn, 293 F.3d at 319 (quoting Paul, 424 U.S. at 711, 96 S.Ct. 1155). Before his removal, Crosby had a contractual right to a $5,000 yearly stipend for his service as Chairman; after his removal, he did not. This is the most basic example of a change in legal status. Similarly, there are no authorities to contradict the precedents in this court and the Supreme Court holding that an indictment of an individual’s honesty is sufficient to trigger a name-clearing hearing in an appropriate scenario. Roth, 408 U.S. at 573, 92 S.Ct. 2701 (“For where a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.” (internal quotation omitted)); Ludwig, 123 F.3d at 410 (“A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.”). Here, Crosby alleges that the defendants’ actions and statements explicitly labeled him both dishonest and lacking integrity.
The supposed lack of clarity on those two issues is the result of the majority’s desire for a case directly on point. While the existence of such a case would make this panel’s decision easier, its absence is not fatal to Crosby’s claim. White v. Pauly, — U.S. —, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam). It is sufficient that “existing precedent ... placets] the statutory or constitutional question beyond debate.” Id. (quoting Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015)). The cases cited above clearly place both questions “beyond debate” on these facts when they are viewed in the light most favorable to Crosby. Accordingly, I disagree with the majority’s conclusion that the law on the first two Quinn factors is not “clearly established” under the doctrine of qualified immunity.
Crosby was terminated from his employment as the Chair of the Department of Health Behavior only one year into his five-year term. None of the defendants informed Crosby—or this court, for that matter—of the identities of his accusers or of the nature of the allegations against him. Defendant Sanderson went on to indict Crosby’s character for honesty, among other things, in front of the faculty of the College of Public Health. At no point did any of the defendants attempt to provide him with an opportunity to meaningfully respond to the substance of the allegations against him. By Crosby’s account, these *563 events have rendered him persona non grata at several other peer institutions and have made any further professional advancement in his chosen field impossible. Because I would hold that this is precisely the type of case in which the Fourteenth Amendment requires a name-clearing hearing, I respectfully dissent.

. I agree with the majority that the allegations in Crosby’s complaint “easily establish the last three factors." Supra at 555. Accordingly, I do not address them here.

. We must accept those allegations for purposes of a motion to dismiss. See Moody v. Mich. Gaming Control Bd., 847 F.3d 399, 402 (6th Cir. 2017). Any dispute about the truth of that allegation is more appropriately resolved on a motion for summary judgment.