889 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Merriel BULLOCK, Plaintiff-Appellant,
v.
THE BOARD OF REGENTS of the STATE UNIVERSITY and COMMUNITY
COLLEGE SYSTEM of the STATE of TENNESSEE, Thomas Garland,
Ned Mcwherter, Gwen R. Awsumb, William O. Beach, Howard E.
Bond, Clifford H. Henry, Ross N. Faires, William N. Farris,
Thomas Ingram, Arlis Roaden, J.D. Johnson, Richard Lewis,
Hubert Mccullough, Charles Smith, A.C. Clark, J. Howard
Warf, David White, Ed Williams, III, Abby Eloten, Tennessee
State University, Otis L. Floyd, George W. Cox, Defendants-Appellees.
 No. 89-5204.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1989.
 
 Before BOYCE F. MARTIN, Jr., and BOGGS, Circuit Judges, and LAWRENCE P. ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Dr. Merriel Bullock appeals a grant of summary judgment against her by the district court in her action arising from the defendants' decision to remove her from her administrative position at Tennessee State University. Her action includes claims for violation of her first amendment rights and her fourteenth amendment procedural due process rights under Section 1983, and for race and sex discrimination under Title VII, Section 1981, and Section 1983. We affirm the judgment of the district court.
 
 
 2
 In reviewing the district court's grant of summary judgment, we construe facts in favor of the nonmoving party--plaintiff Merriel Bullock. The University hired Dr. Bullock, a black female, as an Assistant Professor in August, 1977. This appointment was tenure-track and Dr. Bullock received tenure in June, 1983. One year later, Dr. Bullock, while retaining her faculty position, was appointed the first Director of Tennessee State's Center of Excellence--Basic Skills for the Disadvantaged. A Tennessee State Board of Regents policy provided that no faculty member would be eligible for tenure in an administrative position, but could hold tenure only in a faculty position.
 
 
 3
 During 1986, several meetings occurred between Dr. Bullock and some of the defendants as a result of annual budget considerations. Following these meetings, Dr. Bullock had a telephone conversation with Dr. Appleson of the Tennessee Higher Education Commission, the organization that made funding decisions. Dr. Bullock and Dr. Appleson discussed the hiring of an additional secretary and the ability of Tennessee State to divert funds from the Center. Defendant Floyd, one of her superiors at Tennessee State, was upset when he learned of this conversation.
 
 
 4
 Soon afterward, Dr. Bullock learned that she was removed from her position as Director of the Center as of the previous day. Her salary dropped from $43,193 to $30,943. She received no advance notice of her demotion.
 
 I. The First Amendment Claim
 
 5
 Dr. Bullock's strongest argument is that defendants violated her first amendment rights by removing her in retaliation for her conversation with Dr. Appleson. The Supreme Court has held that the first amendment only protects such speech in the context of public employment if it implicates a matter of "public concern." Connick v. Myers, 461 U.S. 138, 146-47 (1983). The district court held that Dr. Bullock's first amendment rights were not violated because her conversation with Appleson did not address a matter of public concern. Dr. Bullock argues that the district court erred because her call alerted Dr. Appleson to a potential misuse of state funds. Dr. Bullock states that she expressed fears that her superiors would divert funds earmarked for the Center to other areas of Tennessee State.
 
 
 6
 Defendants respond that Dr. Bullock's speech is not protected because it was directed at her personal goal of procuring a secretary. However, the protection of the first amendment is not limited to those who act out of public instead of personal motives. To gain first amendment protection, it is the substance of the speech that must address a matter of public concern. Connick, id.
 
 
 7
 A conversation about an improper diversion of funds could be a matter of public concern under the first amendment, but Dr. Bullock has not shown that her conversation with Appleson actually addressed such an improper diversion. According to the deposition testimony of both Dr. Bullock and Dr. Appleson, Dr. Bullock merely asked abstractly whether funds earmarked for the Center could be diverted. She did not warn him that she thought such a diversion might occur. Thus, she has failed to show that her conversation actually did address the public concern that she alleges.
 
 
 8
 If the first amendment did protect Dr. Bullock's speech, a court would balance the speaker's interest in expressing her concerns against the government's interest in efficiently fulfilling its responsibilities. Pickering v. Board of Education, 391 U.S. 563 (1968). Because the district court found that the speech was unprotected, it did not reach this question. In affirming, neither do we.
 
 II.The Race and Sex Discrimination Claims
 
 9
 Dr. Bullock alleges disparate treatment by the defendants in removing her from her administrative position as Director of the Center and in reducing her salary upon her removal. Dr. Bullock first challenges the district court's finding that she has failed to introduce evidence to show that the defendants' nondiscriminatory reasons for her removal were mere pretexts.[1] Defendants' nondiscriminatory reasons for her removal are: (1) the Center failed to meet its benchmarks and the benchmark report contained irregularities, (2) inaccuracies in the Center's proposed budget, and (3) problems with the Center's Special Education and Rehabilitation Component.
 
 
 10
 Dr. Bullock argues that she has presented sufficient evidence to go to trial on whether these reasons were mere pretexts. Dr. Bullock states that she was the only director removed, even though 18 of the 26 Centers failed to meet one or more benchmarks. Dr. Bullock states that of the 26 Centers for Excellence, she was the only black director and the only female director with two years experience. She also alleges that no determination had been made as to whether her Center had met its benchmarks at the time she was removed.
 
 
 11
 These facts are insufficient to make a showing that the defendants' reasons are merely pretexts. First, Dr. Bullock has addressed only the Center's failure to meet its benchmarks, not the other reasons for her removal. Second, Dr. Bullock's comparisons to the other Centers have little relevance because the other directors were under different supervisors. President Floyd and Vice-president Cox of Tennessee State, who were responsible for her removal, did not have authority over the directors of other Centers for Excellence. Because she has failed to present evidence that could show that the defendants' reasons for her dismissal were merely pretexts, summary judgment was appropriate.
 
 
 12
 Dr. Bullock also contends that she received disparate treatment in the reduction of her salary. Dr. Bullock advances several reasons why her salary was reduced either wrongly or by too much after her removal from the directorship of the Center. However, Dr. Bullock fails to show how the reduction, even if incorrect, stemmed from race or sex discrimination. Although Dr. Bullock stated in her deposition that she knew of white males who received smaller salary reductions after demotions, she cited only one example and failed to proffer any evidence more substantial than inadmissible, conclusory allegations. Thus, her claim cannot survive the defendant's motion for summary judgment.
 
 III. The Procedural Due Process Claims
 
 13
 Dr. Bullock alleges three violations of her fourteenth amendment due process rights: (1) that defendants violated her property interest by failing to give her notice and a hearing prior to her removal; (2) that defendants violated her property interest by failing to give her a hearing after her removal from her administrative position; and (3) that defendants violated her liberty interest by making public statements about her removal. The district court held in regard to the first two claims that she had no property interest in her administrative position and it held in regard to the third claim that her liberty interest was not infringed.
 
 
 14
 Dr. Bullock disputes the district court's finding that she had no property interest in the directorship of the Center. The record clearly shows that Dr. Bullock had tenure only in her capacity as an academic professor and not as director of the Center, but Dr. Bullock presents two arguments as to why she had a property interest in being director as well. First, she argues that Tennessee State's Handbook for Non-Instructional Personnel prevents her removal during the middle of the year without cause. The district court found from the deposition of defendant Cox that the Handbook applies only to "non-teaching persons who do not have faculty rank." Because Dr. Bullock does have faculty rank, the district court found that the Handbook does not apply to her. On appeal, Dr. Bullock has presented evidence only that the Handbook was given to her and that in the opinion of administrators who were not familiar with the Handbook, it possibly could apply to her. She has presented no evidence that it actually does apply to her. We agree with the district court that no genuine issue of fact exists.
 
 
 15
 Second, Dr. Bullock argues that as a director, she cannot be removed without the chancellor's prior approval. Tennessee State Board of Regents Policy No. 5:01:00:00 provides that the chancellor's prior approval was required for changes in status of a dean or a position of equivalent level. To show that as a director she was "equivalent" to a dean, Dr. Bullock seeks to introduce defendant Garland's testimony in a different action, Isodor v. Board of Regents, et al., U.S.Dist.Ct. No. 3-87-0669. In Isodor, Garland testified that "a director of a Center of Excellence is an equivalent position to that of a dean." But when read in context, Garland's testimony does not support Dr. Bullock's argument. Garland was comparing the authority that a director of a Center for Excellence and a dean have over their programs, not their procedures for removal. Thus, no evidence shows that a director could be removed only with the prior approval of the chancellor. In contrast, the depositions of defendants Cox, Garland and Floyd all state that a director could be removed for any reason at any time by the President of Tennessee State.
 
 
 16
 Even if prior approval of the chancellor were required, this procedural protection alone would not create a constitutionally protected property interest. A property interest may be created by statute, but it exists independently of procedures defined in the statute. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The mere fact that approval of the chancellor might be required does not create a property right where the chancellor may give that approval at any time for any reason without any notice to the director.
 
 
 17
 Dr. Bullock also disputes the district court's finding that defendants did not infringe her property interest. Public charges of inadequate performance are not sufficient to support a claim for deprivation of a liberty interest. Lake Michigan College Fed. of Teachers v. Lake Michigan Community College, 518 F.2d 1091, 1096-97 (6th Cir.1975) ("allegations of improper or inadequate performance do not constitute a deprivation of liberty"). A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty under Board of Regents v. Roth, 408 U.S. 564, 572-74 (1972).
 
 
 18
 Dr. Bullock alleges only one incident that conceivably could rise to the level of a deprivation of liberty--Dr. Herren's public statement in conjunction with her summary removal that her Annual Report for the Center was a lie. See Board of Regents v. Roth, 408 U.S. 564, 572-74 (1972). Dr. Bullock argues that this accusation of dishonesty eliminated any possibility of her obtaining future employment as an administrator in higher education. But even if Herren's statement does amount to a deprivation of liberty, Herren is not a defendant under this count of the complaint. The defendants are Doctors Garland, Cox and Floyd. Dr. Bullock has not presented evidence that can survive a summary judgment motion on her deprivation of liberty claim.
 
 IV. Conclusion
 
 19
 We do not reach the question of qualified immunity for defendants Garland, Floyd and Cox because the district court did not reach this issue and because it is moot in light of the above holdings. For the foregoing reasons, we affirm the district court's judgment.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendants do not challenge the district court's finding that Dr. Bullock has established a prima facie case of race and sex discrimination, although her replacement was also a black female