RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DANIEL MOODY,

                    *Plaintiff-Appellant*,

    v.

MICHIGAN GAMING CONTROL BOARD; SCOTT MCLEAY; STEVEN J. FERRARI; AL ERNST; NORMA COLE; ERIC PERTINNEN; JIM CURRAN; RICHARD KALM; JOHN LESSNAU,

                    *Defendants-Appellees*.

> No. 16-1155

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:15-cv-11922—John Corbett O'Meara, District Judge.

Argued: December 8, 2016

Decided and Filed: February 2, 2017

Before: COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Hugh M. Davis, CONSTITUTIONAL LITIGATION ASSOCIATES, P.C., Detroit, Michigan, for Appellant. Thomas R Nafso, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Hugh M. Davis, CONSTITUTIONAL LITIGATION ASSOCIATES, P.C., Detroit, Michigan, for Appellant. Thomas R Nafso, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

**OPINION**

---

SILER, Circuit Judge. Daniel Moody ("Moody") appeals from the district court's dismissal of his First Amendment retaliation claim for lack of standing. For the following reasons, we **affirm** the district court's decision.

## I. Factual and Procedural History

Moody is a horse trainer engaged in harness racing and is the trainer of record for his family farm. Defendants are the Michigan Gaming Control Board ("MGCB") and various individual employees ("individual defendants") of the MGCB. Moody's father, John Moody ("John"), was suspended and excluded by the MGCB in 2010. John later publicly criticized and sued the MGCB over those actions. In 2011, an anonymous email led to the investigation of Moody by the MGCB. The purpose behind this investigation was to determine whether Moody was only a "paper trainer" for his father, who could no longer participate in activities related to racing.

The MGCB held a hearing in May 2012, during which it looked into such issues as trainer responsibility at the Moody farm, Moody's tax returns and billing records, and the business practices of the farm. Another hearing was held in July 2012 to investigate certain issues further. These issues included whether Moody was giving a disqualified person (his father) access to racing; Moody's failure to remove the name of a groom from the stable list when the groom was no longer employed at the farm; and Moody's failure to cooperate by not returning a call from an investigator for the MGCB. The MGCB also requested that Moody produce his tax returns and a list of horses, owners, and training contracts.

At the hearings, Moody testified that John, Sarah Garver, and Moody's cousin David, all worked on the farm. He said that John worked around the stables but once a horse began racing, John no longer had contact with that horse. Moody also presented his tax returns and was directed to sign a 4506-T authorization to allow the IRS to release his tax filing information to the MGCB. Moody believed his tax preparer, Sandy Hennessy, had e-filed his 2010 and 2011

tax returns with the IRS. However, Hennessy told the investigators that only the 2011 tax return had been e-filed but that Moody had not been notified of this issue. A third hearing was held in November 2012, which essentially dealt with the same issues as in the previous hearings.

In December 2012, when Moody attempted to file his application for 2013 licensing, he was disqualified from racing until June 2013 for the matters discussed at the November hearing. In January 2013, a consent order was prepared that would have allowed Moody to begin participating in racing in March 2013, but it required Moody to agree not to take legal action against the MGCB. However, because Moody did not sign the consent order, he remained disqualified for six months. He appealed that suspension. In September 2013, Moody was told by the MGCB that he could apply for licensure without any of the preconditions that were proposed. The parties settled, and the administrative law judge dismissed the case.

In 2015, Moody filed a complaint under 42 U.S.C. § 1983 in the Eastern District of Michigan. He raised three different counts in this complaint, against both the MGCB and individual employees in their official and individual capacities. In Count I, he argued that he suffered First Amendment retaliation in the form of his disqualification from racing due to his father's actions in filing suit against the MGCB. In Count II, he argued that he had a liberty interest in his right to engage in the harness-racing industry, and that Defendants had deprived him of that right. In Count III, he claimed that he had a property interest in his licenses to train and race, and that he was deprived of that interest without due process.

Later, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court held that the MGCB was protected against suit due to Eleventh Amendment immunity and that neither the MGCB nor the individual defendants in their official capacities were "persons" subject to suit under 42 U.S.C § 1983. The court then dismissed all claims against the MGCB and the official-capacity claims against the individual defendants. As to the First Amendment claim, the court stated that for third-party standing, there must be a hindrance to the third party's ability to protect his own interest. Noting that Moody alleged an injury and a close relationship between himself and his father, the court nevertheless found that Moody failed to show a hindrance to his father's ability to protect his own rights. As John had filed his own lawsuit against the MGCB and related defendants alleging constitutional violations arising out of the MGCB's investigation of

him, the court ruled that Moody failed to show a hindrance preventing John from asserting his own rights, leaving Moody unable to claim third-party standing. The court also found that Moody did not have a liberty interest in his license, and that he had not been deprived of procedural due process, as several hearings were held both before and after his license was suspended. As such, the court dismissed all counts of the complaint.

Moody later filed a motion to reconsider, pointing to the fact that the trial court did not permit John to amend his complaint and add a First Amendment claim for the alleged retaliation against his son.[1] The court denied the motion. Moody then appealed, arguing that the court erred in finding that John was not hindered from protecting his interests and that Moody has third-party standing to raise the First Amendment retaliation claim.[2]

## II. Analysis

### A. Standard of Review

We review a district court's dismissal of claims pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). As with the consideration by a district court, an appellate court accepts the plaintiff's factual allegations as true and views the complaint in the light most favorable to the plaintiff, but is not required to accept legal conclusions or unwarranted factual inferences as true. *Id.* at 575.

### B. Moody Lacks Third-Party Standing

Standing is a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed. *See Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004). A plaintiff may assert his "own legal rights and interests," but generally, a litigant may not sue to protect the constitutional rights of a third party. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). This bar, however, is not absolute. *Id.* A plaintiff may raise a constitutional claim on behalf of a third party if he can prove (1) injury-in-fact to the plaintiff, (2) a close relationship between the

---

[1]The court denied John's motion to amend because it was untimely, not based on the merits.

[2]Moody does not appeal the dismissal of Counts II and III, which dealt with his alleged liberty interest and lack of procedural due process. Nor does he challenge the immunity ruling and subsequent dismissal of MGCB and the official-capacity claims against the individual defendants.

plaintiff and the third party whose rights he asserts, and (3) a hindrance preventing the third party from raising his own claim.  *See Kowalski*, 543 U.S. at 129-30; *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208 (6th Cir. 2011); *Fieger v. Ferry*, 471 F.3d 637, 649 (6th Cir. 2006).  A close relationship between the litigant and third party ensures that the plaintiff will effectively advocate for the third party's rights. *Kowalski*, 543 U.S. at 129.

In this case, the district court agreed that Moody met the first two requirements for third-party standing in that he had alleged an injury (temporary disqualification from horse racing) and a close relationship between himself and the third party (father and son).  Moody's case was dismissed because the court found that there was no hindrance preventing John from protecting his own rights.  John had filed his own suit against the MGCB and individual defendants, and thus John was able to pursue his own interests in court.  Accordingly, the issue now before us is whether the district court erred when determining that no hindrance existed.

Determining the existence of a hindrance requires examining "the likelihood and ability of the third parties . . . to assert their own rights." *Powers v. Ohio*, 499 U.S. 400, 414 (1991). Courts have found the following to constitute a hindrance that keeps a third party from protecting his or her own rights: deterrence from filing suit due to privacy concerns, imminent mootness of a case, or systemic practical challenges to pursuing one's own rights.  *See Powers v. Ohio*, 499 U.S. 400, 414 (1991) (permitting criminal defendants to raise equal-protection challenges to race-based peremptory strikes due to the limited potential equitable relief, small financial stake, and cost of litigation, all of which keeps jurors from raising the claims themselves); *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (allowing physicians to challenge a law excluding abortions from Medicaid coverage because women may be chilled from filing suit due to a desire to protect their privacy and because of the risk that the case would soon be moot); *Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d at 208 (collecting cases).  Although this list is not exclusive, authority suggests that "[n]o practical barriers exist if the third party actually asserts his own rights." *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008).

Moody presents two arguments as to why his father is effectively hindered from protecting his own interests.  He first argues that his father's lack of standing is itself a hindrance.  He contends that because his father did not suffer an injury due to the retaliation

against Moody, his father would not have the same incentive to vigorously litigate this claim as Moody does.  Moody also argues that even though John sued the MGCB, he was unable to raise the exact retaliation claim at issue now because his attempt to amend the complaint and add this claim was determined to be untimely by the district court.

Moody, however, fails to point to any case where a lack of standing constituted a hindrance.  Furthermore, there is no case law establishing that a failure to timely amend or file a claim is a hindrance.  This is not a case where there might be a chilling effect on speech, as John had already engaged in protected speech, and Moody offers no statement that John's behavior changed due to the actions taken against Moody by the MGCB.  John was not faced with systemic practical difficulties, imminent mootness, or a desire to protect his privacy.  Nor did he face any other apparent hindrances that would keep him from asserting his own rights.  Trying to get this claim into court through third-party standing appears to be an attempt to circumvent the court's denial of John's motion to amend as untimely.  That is not a hindrance.

Moody also attempts to frame his argument as one about close familial relationships, and cites several cases in support.  In *Adkins v. Board of Education of Magoffin County*, 982 F.2d 952, 953 (6th Cir. 1993), the plaintiff claimed that her employment was terminated due to the actions of her husband.  More specifically, she argued that the defendants violated her First Amendment right of association and that she was dismissed "for affiliation and association with her husband and others with whom she had a right to associate." *Id.*  There was no lack of standing because she claimed an injury based on her own protected actions—the right to associate with whom she chose—not the protected actions of a third party. In *Sowards v. Loudon County*, 203 F.3d 426, 430 (6th Cir. 2000), the plaintiff worked for the sheriff's department and claimed that she was retaliated against because her husband was running against the current sheriff.  She sued, arguing that she was terminated in retaliation for the exercise of *her* First Amendment rights of political and intimate association. *Id.*

These cases are easily distinguishable from the instant case.  The plaintiffs in *Adkins* and *Sowards* engaged in the protected action, that of familial/intimate association, and were not seeking to invoke third-party standing. Moody never asserted in his complaint that he was retaliated against for constitutional association with his father or that his relationship with his

father was impaired due to the Defendants' actions. In fact, Moody clearly said that it was his father's protected First Amendment actions that formed the foundation of the retaliation claim, and Moody was seeking to use third-party standing to assert that claim. Furthermore, at oral argument, Moody conceded that he was not bringing a claim based on familial association, so we fail to see how the reasoning in *Adkins* and *Sowards* applies to Moody's case.

As Moody fails to show a hindrance preventing his father from protecting his own rights, we agree that Moody lacks third-party standing to bring the retaliation claim.

**AFFIRMED**.