RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RICHARD A. CROSBY, PH.D.,

　　　　　　　　*Plaintiff-Appellant,*

　　*v.*

UNIVERSITY OF KENTUCKY,

　　　　　　　　*Defendant,*

ELI CAPILOUTO; TIMOTHY TRACY, Ph.D.; WILLIAM EUGENE THRO; WAYNE T. SANDERSON, Ph.D., CIH; TERRY ALLEN, in their individual and personal capacities,

　　　　　　　　*Defendants-Appellees.*

No. 16-6598

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:15-cv-00276—Joseph M. Hood, District Judge.

Argued: April 26, 2017

Decided and Filed: July 17, 2017

Before: MERRITT, GILMAN, and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:** Kent Masterson Brown, LAW OFFICES OF KENT MASTERSON BROWN, PLLC, Lexington, Kentucky, for Appellant. Bryan H. Beauman, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, for Appellees. **ON BRIEF:** Kent Masterson Brown, LAW OFFICES OF KENT MASTERSON BROWN, PLLC, Lexington, Kentucky, for Appellant. Bryan H. Beauman, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, William E. Thro, UNIVERSITY OF KENTUCKY, Lexington, Kentucky, for Appellees.

　　　GILMAN, J., delivered the opinion of the court in which DONALD, J., joined, and MERRITT, J., joined in part. MERRITT, J. (pp. 10–22), delivered a separate opinion dissenting from Part II.B.2 of the majority opinion.

———————

**OPINION**

———————

RONALD LEE GILMAN, Circuit Judge.  Richard A. Crosby, a tenured professor at the University of Kentucky's College of Public Health, appeals from the dismissal of his claims against various administrative officials affiliated with the University.  He brought suit under 42 U.S.C. § 1983 and under Kentucky state law in connection with his removal as Chair of the Department of Health Behavior.  Crosby argues on appeal that, contrary to the district court's holding, his removal amounted to an actionable deprivation of his protected property and liberty interests without due process of law under both the U.S. Constitution and the Kentucky Constitution.  He also asserts that the defendants are not protected by the doctrine of qualified immunity.  Finally, Crosby claims that the defendants are liable under Kentucky contract law for monetary damages caused by his removal.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

### A.    Factual background

Because Crosby appeals from the dismissal of his claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  The facts presented below are therefore cast in the light most favorable to Crosby.

Crosby was hired in 2004 as a professor by the College of Public Health at the University of Kentucky.  The University's Board of Trustees awarded him tenure that same year.  In 2006, he was appointed to a four-year term as Chair of the Department of Health Behavior.  Crosby was reappointed for two additional four-year terms as Chair, first in 2010 and again in 2014.  As Chair, Crosby was responsible for teaching, mentoring assistant professors, producing and publishing scholarly works, securing and administering grants to advance research and

understanding in the field of health behavior, and overseeing the needs of the department's faculty and students. He was paid a $5,000 stipend in addition to his salary for each year that he served as Chair.

Crosby received consistently favorable reviews from both students and fellow faculty members from the time of his arrival at the College until 2015. During Crosby's service as Chair, he taught several classes, published extensively, secured a number of prestigious research grants, mentored several graduate and post-doctoral students, and served in various capacities with organizations aligned with his research interest in sexual health. Despite Crosby's achievements and reputation, however, the University's Office of Institutional Equity and Equal Opportunity (OIEEO), at the request of Provost Timothy Tracy, began in June 2015 to investigate reports of Crosby's inappropriate behavior.

Interim Dean Wayne Sanderson placed Crosby on paid administrative leave during the pendency of the investigation. Crosby was informed of the OIEEO investigation and of the decision to place him on administrative leave during a June 3, 2015 meeting with Sanderson. While on administrative leave, Crosby was not permitted to be present on campus, to interact with faculty, staff, or students, or to retaliate against anyone for participating in the investigation. Although Crosby received a letter from Sanderson communicating the terms of his administrative leave, he was not informed of the specific allegations against him during this time. The letter did contain a promise, however, that Crosby would have an opportunity to respond to the allegations.

Terry Allen, the Director of the OIEEO, was primarily responsible for conducting the investigation into the allegations against Crosby. On June 17, 2015, Crosby met with Allen to discuss the investigation. Allen did not identify Crosby's accusers; he instead asked Crosby generally about the allegations, which Crosby denied. One week later, Allen submitted a report on the results of his investigation to Tracy and William Thro, General Counsel for the University of Kentucky.

Allen's report stated that, after conducting a number of interviews with faculty and staff, he observed "a disproportionate number of negative remarks . . . regarding Dr. Crosby's

behavior." Representative examples include descriptions of Crosby as "[v]olatile," "explosive," "disrespectful," "very condescending," and "out of control." Allegations that Crosby was prone to angry outbursts and retaliatory actions also appear more than once. The report included an allegation that Crosby stated that the Associate Dean for Research had been appointed "because she is a woman, genitalia." Finally, the report contained claims that the Department's performance was suffering as a result of Crosby's temper and hostility towards other departments. The report ultimately recommended that Crosby be removed from his position as Chair of the Department of Health Behavior, noting that:

> Based on a thorough investigation, the Office of Institutional Equity and Equal Opportunity finds Richard A. Crosby's behavior as Chair of the Department of Health Behavior in violation of the University's Governing Regulation Ethical Principles:
> - Mutual respect and human dignity
> - Personal and institutional responsibility and accountability
> - Exhibits personal integrity, honesty, and responsibility in all actions
> - Provides an environment of mutual respect, impartiality, and collaboration

On July 2, 2010, Provost Tracy forwarded a copy of the report to Dean Sanderson, along with a letter informing Sanderson that he concurred with Allen's recommendation to remove Crosby from his chairmanship. Tracy also authorized Sanderson to determine the "work arrangement" that would be most beneficial to the College. On July 7, 2015, Sanderson forwarded a copy of the report to Crosby, along with a letter informing Crosby that his appointment as Chair was terminated, effective immediately. Sanderson's letter also stated that Crosby's tenured faculty appointment in the Department of Health Behavior was to remain in effect, but that his office and administrative support would be moved to the Gerontology Department.

Crosby filed two documents with General Counsel Thro on July 14, 2015, demanding that the University afford him his procedural rights under proposed Governing Regulation XX, including "an evidentiary hearing before a properly-convened and impartial Faculty Hearing Panel." He also requested that Allen's report either be stricken in its entirety or returned to Allen

for the inclusion of a more definite statement of the charges against him and a disclosure of the identities of his accusers. Crosby further stated that, if University officials refused to implement the procedures set forth under proposed Governing Regulation XX, he wished to invoke the administrative remedies available under the already enacted Governing Regulation I. Finally, Crosby informed the University that he would "proceed to a court of competent jurisdiction to address the systematic and intentional denial of his property without due process of law" if his appeal should prove unsuccessful.

Thro sent a letter to Crosby the following day, informing Crosby that his reliance on the rights conferred by proposed Governing Regulation XX was inappropriate because that regulation had not yet been adopted by the University. Crosby was instead told that his appeal would be handled by Dr. Eli Capilouto, President of the University, under the existing Governing Regulation I, Section F. Capilouto's chosen appellate procedure was to commission "two distinguished senior faculty members [with] extensive experience as administrators to make an independent assessment of the overall climate in Dr. Crosby's department." Crosby's counsel sent a letter replying to Thro on July 16, 2015, objecting to the University's refusal to process his appeal under proposed Governing Regulation XX and stating that, if Capilouto did not reverse the decision, Crosby would seek judicial remedies to secure his due-process rights.

**B.        Procedural background**

In September 2015, Crosby filed a state-court complaint against the individual defendants and the University of Kentucky in connection with his removal as Chair of the Department of Health Behavior. Capilouto suspended any further proceedings on Crosby's appeal pending this litigation. The University of Kentucky also removed the case to the United States District Court for the Eastern District of Kentucky. Crosby then filed a Verified Amended and Substituted Complaint in October 2015, removing the University as a defendant. In his amended complaint, Crosby brings three claims against the defendants in their individual capacities: (1) a claim pursuant to 42 U.S.C. §§ 1983 and 1988 that his removal amounted to an actionable deprivation of his protected property and liberty interests without due process of law, (2) a claim under Kentucky state law that his removal constituted a violation of the rights provided by the

Kentucky Constitution, and (3) a claim that the defendants are liable under Kentucky contract law for monetary damages caused by his removal.

The defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the district court granted in its entirety. Crosby's claims were found deficient as a matter of law and the defendants were determined to be shielded from liability under the doctrine of qualified immunity. This timely appeal followed.

## II.    ANALYSIS

### A.    Standard of review

We review de novo the district court's dismissal under Rule 12(b)(6). *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Under Rule 12(b)(6), both the district court and ourselves must accept the plaintiff's factual allegations as true, and we view the complaint in the light most favorable to the plaintiff, but we are "not required to accept legal conclusions or unwarranted factual inferences as true." *Id.*

### B.    Crosby's § 1983 claims

Crosby seeks redress for two alleged violations of his right to procedural due process under the Fourteenth Amendment. In the defendants' motion to dismiss, they argue that Crosby failed to assert any viable cause of action under the U.S. Constitution and that, in any event, they are shielded from liability by the doctrine of qualified immunity. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[W]hether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). To determine whether a state official is entitled to qualified immunity, we ask two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) was that right "clearly established . . . in light of the specific context of the case[?]" *Saucier v. Katz*,

533 U.S. 194, 201 (2001). This analysis can be performed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Crosby asserts that the defendants violated his clearly established Fourteenth Amendment rights when they deprived him of his property and liberty interests in conjunction with his removal as Chair. To resolve such procedural due process issues, we utilize the two-step analysis set forth in *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990): "We initially determine whether a protected property or liberty interest exists and then determine what procedures are required to protect that interest." *Id.*

### 1.     *Property-interest claim*

Crosby first claims that he was deprived of a protected property interest without due process when his four-year appointment as Chair of the Department of Health Behavior was terminated. To be entitled to procedural due process in connection with his dismissal as Chair, Crosby must demonstrate a "legitimate claim of entitlement" to his position; a mere "unilateral expectation" or "abstract need" to continue undisturbed in his post is not enough. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). We look to "existing rules or understandings that stem from an independent source such as state law" to determine whether a benefit rises to the level of a protected property interest. *Id.* For example, "[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). The essential inquiry is whether there exists a "mutually explicit understanding[] that support[s] [the plaintiff's] claim of entitlement." *Perry v. Sindemann*, 408 U.S. 593, 601 (1972).

Sixth Circuit caselaw establishes that "tenured university professors [do] not have a constitutionally protected property interest in administrative posts." *Stringfield v. Graham*, 212 F. App'x 530, 538 (6th Cir. 2007). A property interest can arise, however, where the administrative position itself is a tenure-track appointment or where a professor has received an express guarantee that he will not be removed from the position except for cause. *See id.* at 537–39 (reversing and remanding the dismissal of the plaintiff's due process claim for further factfinding to determine whether she had a property interest in her administrative position when

contractual language in the notice of appointment ambiguously denominated the position as a "[t]enure track [a]ppointment"); *Bullock v. Bd. of Regents*, No. 89-5204, 1989 WL 140167, at *3 (6th Cir. 1989) (per curiam) (holding that a tenured Tennessee professor had no protected property interest in her directorship position where the record demonstrated that she had tenure "only in her capacity as an academic professor"); *Garvie*, 845 F.2d at 651–52 (holding that a Tennessee professor did not have a clearly established property interest in his directorship position, despite allegedly being provided "oral explanations" that he would not be removed for five years, because the position was expressly nontenured and because Tennessee law does not recognize implied contracts "in the face of a declaration to the contrary by the party to be charged").

Crosby asserts that his role as Chair constituted fixed-term employment and, as such, he could be terminated only for cause. He bases this argument on several University of Kentucky regulations governing administrative and faculty appointments. These provisions, according to Crosby, confer upon him a property interest in his position as Chair that cannot be taken away without due process. But none of the regulations cited by Crosby give rise to a "mutually explicit understanding" supporting a claim of entitlement in his position as Chair. *See Perry*, 408 U.S. at 601. He first points to Governing Regulation VIII(A)(4)(a), which provides that "the term of a department chair's appointment shall be four (4) years." *See* University of Kentucky Regulations, Governing Regulation, Part VIII, University Appointments, *available at* http://www.uky.edu/regs/files/gr/gr8.pdf. Crosby asserts that this regulation prevents him from being removed from his chairmanship before the expiration of his four-year term in 2018 except for cause.

Governing Regulation VIII(A)(4)(a), however, contains no mention of the removal process for department chairs. In addition, Kentucky contract law rebuttably presumes that employment agreements are "at will"—that is, an employee "is subject to dismissal at any time and without cause" absent contractual language that "specifically manifest[s] [the parties'] intention to condition termination only according to express terms." *Bailey v. Floyd Cty. Bd. of Educ. ex rel. Towler*, 106 F.3d 135, 141 (6th Cir. 1997) (citing *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491 (Ky. 1983)). In other words, at-will employees have no

constitutionally protected property interest in their employment absent an express contrary manifestation from their employer. *See id.* at 141–42. Governing Regulation VIII(A)(4)(a) does not affirmatively state that department chairs can be removed only for cause, so this provision does not alter Crosby's default status as an at-will employee with respect to his administrative appointment.

Crosby also contends that University Senate Rule VII confers upon him a protected property interest in his position as Chair. This rule affords faculty members various procedural rights prior to removal, including the right to adequate notice, an evidentiary hearing, and an appeal. But, as the district court correctly noted, the requirements of Rule VII are limited to proceedings brought against faculty members in their capacity *as faculty*, not in their capacity *as administrators*. Rule VII is thus inapplicable to the OIEEO investigation into Crosby's behavior in his administrative role as Chair and does not give rise to a "mutually explicit understanding" that Crosby would continue in his chairmanship for the duration of the four-year term. *See Perry*, 408 U.S. at 601.

Nor do the provisions of Kentucky Revised Statutes §§ 164.220–230, which Crosby also cites, provide him with a protected property interest in his position as Chair. The language in this statutory scheme vests the University of Kentucky Board of Trustees with exclusive jurisdiction over the appointments of University employees, including the "power to suspend or remove" such employees. Ky. Rev. Stat. Ann. § 164.230. Crosby contends that this language protects him from being removed as Chair without the approval of the Board of Trustees. As the district court noted, however, the Kentucky Revised Statutes do not proscribe a procedure for removal of administrative appointees, nor do they require the Board of Trustees to vote on every removal. In addition, the University's Governing Regulations specifically permit the Board of Trustees to delegate "certain responsibilities to the President, . . . the Graduate Faculty, and the faculties of educational units in order to provide for the responsible and efficient administration of the University and the accomplishment of its goals." *See* University of Kentucky Regulations, Governing Regulation, Part II(A)(1), *available at* http://www.uky.edu/regs/files/gr/gr2.pdf. The Kentucky Revised Statutes therefore do not entitle Crosby to additional procedural protections or provide him with an entitlement in his position as Chair.

Finally, Crosby points to proposed Governing Regulation XX, which provides procedural rights similar to those enumerated in University Senate Rule VII. Crosby contends that this regulation affords him the right to have the allegations against him considered by a Faculty Inquiry Panel and the right to appear before a Faculty Hearing Panel, where he could cross-examine witnesses prior to his removal as Chair. True enough, "the Supreme Court has held that 'rules and understandings, promulgated and fostered by state officials' can form the foundation of a protected property interest." *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (quoting *Perry*, 408 U.S. at 602–03). But Proposed Governing Regulation XX is not binding upon the defendants because it has yet to be promulgated by the Board of Trustees, as required under Kentucky law. *See* Ky. Rev. Stat. Ann. § 164.200; *see also* University of Kentucky Regulations, Governing Regulation, Part XIII(C), *available at* http://www.uky.edu/regs/files/gr/gr13.pdf (requiring all amendments to be approved by the Board of Trustees). Because Governing Regulation XX is not yet the policy of the University, it could not give rise to a mutual understanding that Crosby would continue in his chairmanship for the duration of his term.

In sum, Crosby has pointed to no state statute, formal contract, or contract implied from the circumstances that supports his claim to a protected property interest in his position as Chair. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). His chairmanship was not a tenure-track appointment, nor did he receive any express guarantee that he would not be removed from the position except for cause. Nor do the regulations and statutes cited by Crosby contain any language sufficient to rebut the presumption under Kentucky law that his employment as Chair was "at will." Crosby has therefore failed to show that his Fourteenth Amendment right not to be deprived of a property interest without due process was violated. Because he failed to establish the first prong of the *Saucier* test, the defendants are entitled to qualified immunity. The district court therefore did not err in dismissing this claim.

### 2.    *Liberty-interest claim*

Crosby also contends that the defendants deprived him of his liberty interest in his good name and reputation by denying him a "name-clearing hearing" after removing him as Chair and making "stigmatizing" statements about him. He asserts that he suffered these stigmatizing

effects after Dean Sanderson called a meeting of the faculty of the College of Public Health to inform them that Crosby had been found in violation of the University's ethical principles on "personal integrity," "dishonesty," "human dignity," "personal . . . responsibility and accountability," "mutual respect," "impartiality," and "collaboration." The purpose of the meeting was to request that the faculty members report any retaliatory actions that Crosby might take against them. Because of the defendants' actions against him and the public statements made regarding his reputation and character, Crosby alleges that he has been eliminated from consideration for employment at other institutions.

The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in their "reputation, good name, honor, and integrity." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). That liberty interest is impugned when a state actor "stigmatize[s]" an individual by means of "voluntary, public dissemination of false information" about the individual. *Id.* at 320 (internal quotation marks omitted) (quoting *Chilingirian*, 882 F.2d at 205). "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). But defamation alone is not enough to trigger this constitutional protection; rather, the alleged damage must be tied to "[s]ome alteration of a right or status 'previously recognized by state law.'" *Quinn*, 293 F.3d at 319 (quoting *Paul v. Davis*, 424 U.S. 693, 711–12).

In order to apply these general principles, our circuit "has identified five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing." *Id.* at 320. They are the following:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment . . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Id.* (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)). Crosby can easily establish the last three factors—the stigmatizing statements were voluntarily disseminated by Dean Sanderson at a faculty meeting, and Crosby claims that these statements are false. But the establishment of the first two factors is far less certain. The district court chose to address only the first factor, holding that Crosby was not terminated from his employment because he remained a tenured member of the faculty even after his removal as Chair.

The first *Quinn* factor was derived from the proposition that the damage to plaintiff's reputation must be accompanied by "some alteration of a right or status 'previously recognized by state law'" in order to implicate a liberty interest. *See id*. at 319 (quoting *Paul*, 424 U.S. at 711–12). Where state law "does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions[,]" no liberty interest is implicated. *Paul*, 424 U.S. at 711–12. A name-clearing hearing is therefore not "required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee." *Id*. at 710.

Crosby does not dispute that he remains employed as a tenured professor, instead arguing that his position as Chair constituted a distinct employment arrangement. But Crosby cites no case, and we can find none, holding that removal from a nontenured administrative position constitutes a "termination from employment" as required by the first *Quinn* factor. The closest precedent in this circuit, in fact, noted that this area of law was not so clearly established as to overcome the defense of qualified immunity. *See Garvie v. Jackson*, 845 F.2d 647, 652 (6th Cir. 1988) (holding that a plaintiff who was removed from his position as Department Head, yet remained a tenured professor at full salary, did not have a clearly established liberty interest in his administrative position). Garvie could not overcome the defense of qualified immunity because "[i]t is not clear . . . that defamation unaccompanied by termination of employment or another change in [the plaintiff's] legal status constitutes a deprivation of liberty under the fourteenth amendment." *Id.* Crosby's argument fares no better.

Moreover, Crosby's case falters at the second factor, which requires him to show that the statements made against him alleged more than "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *See Quinn*, 293 F.3d at 320. No liberty interest

is implicated when "[a] charge . . . merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997) (internal quotation marks omitted) (quoting *Chilingirian*, 882 F.2d at 205–06 n.8). The statements made in the course of Crosby's termination must therefore have imposed upon him "[a] moral stigma such as immorality or dishonesty" capable of "'seriously damag[ing] his standing and associations in his community'" or that "'[would] foreclose[] his freedom to take advantage of other employment opportunities.'" *See id.* (quoting *Roth*, 408 U.S. at 573).

Although the statements made by Dean Sanderson could certainly be taken to indicate that Crosby is a dishonest person, Crosby has not clearly established that the comments meet all the requirements of the second *Quinn* factor as set forth in our claselaw. Specifically, Crosby has not demonstrated that "a definite range of opportunities is no longer open" to him. *See Lake Michigan Coll. Fed'n of Teachers v. Lake Michigan Cmty. Coll.*, 518 F.2d 1091, 1097–98 (6th Cir. 1975) (holding that the plaintiffs, who were teachers discharged for participating in an illegal strike, could not establish that they were deprived of a protected liberty interest where "[m]any of the faculty members did succeed in obtaining other jobs, some of which were teaching positions").

Crosby does contend that his applications for professorships at the University of Minnesota and at Emory University have been placed on hold due to the stigmatizing effects from his removal as Chair. He also claims that an offer he received to become a professor at the Kinsey Institute at Indiana University was revoked in the wake of his removal. On the other hand, Crosby remains a fully tenured professor at the University of Kentucky. And our caselaw establishes that "[a] charge that merely makes a plaintiff less attractive to other employers" does not constitute a deprivation of a liberty interest. *See Chilingirian*, 882 F.2d at 205 n.8.

To meet the second *Quinn* factor, Crosby must instead "demonstrate stigmatizing governmental action which so negatively affects his . . . reputation that it effectively forecloses the opportunity to practice a chosen profession." *See Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996). And we have previously held that a plaintiff's liberty interest was not implicated when the plaintiff, who worked as a teacher, remained employed by the defendant

school district in the wake of allegedly stigmatizing statements. *See Baar v. Jefferson Cty. Bd. of Educ.*, 311 F. App'x 817, 826 (6th Cir. 2009) (holding that the plaintiff did not satisfy the second element of the *Quinn* test when he "continue[d] to work as a teacher in the [defendant] County schools" after the allegedly stigmatizing statements were publicized). Similarly, Crosby's chosen *profession*—being a professor—is distinct from his *appointment* as Chair. Crosby is therefore not foreclosed from his chosen profession, despite the fact that the stigmatizing allegations against him may very well have made him less attractive to other employers.

Based on the foregoing caselaw, Crosby has likely failed to establish the second *Quinn* factor. We need not definitively decide this question, however, because Crosby at the very least has been unable to demonstrate that his protected liberty interest was "clearly established . . . in light of the specific context of the case." *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). In order to violate a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Crosby has not made such a showing. No caselaw squarely establishes that Crosby's removal as Chair constituted a "termination from employment" as required by the first *Quinn* factor, or that the stigmatizing statements made against him alleged more than "improper or inadequate performance, incompetence, neglect of duty or malfeasance," *see Quinn*, 293 F.3d at 320, "that [would] foreclose[ ] his freedom to take advantage of other employment opportunities," *see Ludwig*, 123 F.3d at 410 (quoting *Roth*, 408 U.S. at 573), as required by the second *Quinn* factor.

In short, "the unlawfulness" of the defendants' actions was not apparent "in the light of pre-existing law." *See Anderson*, 483 U.S. at 640. The defendants are therefore entitled to qualified immunity on Crosby's claim that he was deprived of a liberty interest without due process of law. *See Saucier*, 533 U.S. at 201. Because we affirm the district court's holding on this ground, we need not reach the question of whether Crosby sufficiently requested a name-clearing hearing in a manner necessary to trigger his alleged right to such a hearing.

**C.      Crosby's claims under the Kentucky Constitution**

Crosby also claims that the district court erred in dismissing his claims under Kentucky Constitution §§ 1 and 2, which contain the state's due process protections.  The court construed Crosby's complaint as a request for money damages only.  And because "no authority [exists] under which he could recover money damages from individuals in their individual capacities for such violations," Crosby's claims were held not to be viable.  *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 727 (E.D. Ky. 2002).  Crosby now argues that he also sought injunctive relief based on the defendants' violation of the Kentucky Constitution, pointing specifically to language in his prayer for relief requesting "such other relief against all of the Defendants, as allowed by 42 U.S.C. § 1983, to ensure that the effects of the unconstitutional and unlawful practices are eliminated and do not affect Plaintiff Crosby's, or others', employment opportunities," and "such other and further relief to which Plaintiff Crosby may show himself justly entitled."

We first note that Crosby made no specific request for injunctive relief under 42 U.S.C. § 1983, a federal statute.  This leaves only his argument that the request for "such other and further relief to which . . . Crosby may show himself justly entitled" should be construed as a demand for injunctive relief under state law.  We decline to adopt such a construction.  Crosby specifically requested compensatory damages, punitive damages, and attorney's fees in his complaint, without ever mentioning injunctive relief.  Furthermore, the section of Crosby's complaint addressing the defendants' alleged violations of the Kentucky Constitution details Crosby's "severe and substantial damages," and asks for compensatory damages without ever mentioning injunctive relief.  Finally, Crosby originally pled a specific claim for injunctive relief against the University of Kentucky, which he later omitted after he filed an amended complaint dropping the University as a defendant.

We therefore decline to construe the boilerplate language contained in Crosby's complaint as a request for injunctive relief.  This leaves Crosby's complaint as requesting only monetary damages in connection with his claim against the individual defendants for violating the Kentucky Constitution.  And because Kentucky law does not recognize such a cause of action, the district court did nor err in dismissing Crosby's claim.

**D.     Crosby's breach-of-contract claim**

Finally, Crosby argues that the defendants are liable for damages associated with the University's breach of a purported de facto agreement between himself and the University regarding his service as Chair. This alleged de facto agreement is grounded primarily on Governing Regulation VIII(A)(4)(a), which provides that "the term of a department chair's appointment shall be four (4) years." According to Crosby, the defendants were bound by this provision and therefore breached the contract when they removed him from that position. The district court rejected his argument, noting that Crosby had failed to cite to any law supporting the notion that this regulation constitutes a de facto contract. Moreover, the individual defendants were not a party to any agreement with Crosby and therefore no privity exists to support a breach-of-contract action for damages against any of them. Crosby presents no cogent argument against the district court's holding. Accordingly, the court did not err in dismissing Crosby's common-law contract claim.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting with respect to Part II.B.2. This case needs to be tried, not disposed of on the pleadings. The plaintiff, we must assume, was greatly harmed by the defendants' accusations of dishonesty when he was removed as head of a university department and his pay significantly reduced as a result. He also claims he was greatly harmed by anonymous falsehoods that he was given no opportunity to rebut. Our case law should, and does, protect state employees from career-destroying defamation without an opportunity for a due process hearing that allows them to defend their reputations. I, therefore, do not agree with the majority's holding that Crosby has failed to allege a deprivation of his liberty interest in his good name and reputation sufficient to survive a motion to dismiss. Because I would hold that Crosby has made out a claim under § 1983 for deprivation of his liberty interest and that the defendants are not protected by the doctrine of qualified immunity, I would remand the case to the district court for further proceedings on that claim.

Federal courts have long held that the Fourteenth Amendment secures the individual's right to due process when a state employer deprives a state employee of his protected liberty interest in his "good name, reputation, honor, or integrity" in connection with "[s]ome alteration of a right or status 'previously recognized by state law.'" *Paul v. Davis*, 424 U.S. 693, 708, 711-12 (1976); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002); *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). In such a case, the Constitution requires the state to provide the employee with a name-clearing hearing if he requests one. *Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000).

Five factors are relevant to determine whether Crosby is able to state a claim for deprivation of his protected liberty interest in his good name and reputation:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment . . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff

must claim that the charges made against him were false.  Lastly, the public dissemination must have been voluntary.

*Quinn*, 293 F.3d at 320 (quoting *Brown*, 214 F.3d at 722-23).  In addition to satisfying each of those five factors, the plaintiff must also allege that he requested and was denied a name-clearing hearing.  *See id.*  "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process."  *Id.*

I believe that Crosby has pleaded sufficient factual allegations to satisfy the *Quinn* standard for purposes of a motion to dismiss.  Unlike the majority, I would hold that the allegations in Crosby's complaint are sufficient to satisfy the first two *Quinn* factors—that is, that the statements at issue were made "in conjunction with the plaintiff's termination from employment" and that the alleged statements did more than accuse Crosby of "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance."[1]  *Id.*  The majority's decision to the contrary is the result of reliance on precedents that are not on point in this case.

The majority reads this court's decision in *Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988), as holding that a tenured professor removed from an administrative post is not "terminated" for purposes of a liberty interest claim so long as he remains a tenured professor at full salary.  That interpretation mischaracterizes the panel's reasoning in *Garvie*.  Moreover, applying that supposed rule in this case requires the majority to view the facts in something short of the light most favorable to the plaintiff.  In *Garvie*, this court rejected the liberty interest claim of a tenured professor who alleged that he was defamed in connection with the University of Tennessee's decision not to renew his appointment as Head of the Department of Speech and Theatre.  *Id.* at 649, 652.  Contrary to the majority's reasoning in this case, the panel in *Garvie* expressly found that the plaintiff had been "terminated as Department Head."  *Id.* at 652.  Despite so finding, the *Garvie* panel rejected the plaintiff's liberty interest claim because he "continued to be employed by the University as a full-time, tenured professor *at full salary*" and, alternatively, because the plaintiff made "no showing that a definite range of opportunities [was] no longer open to him."  *Id.* (emphasis added) (internal quotation omitted).

---

[1]I agree with the majority that the allegations in Crosby's complaint "easily establish the last three factors."  *Supra* at 12.  Accordingly, I do not address them here.

Neither rationale is applicable here. Crosby's complaint alleges that the University reduced his pay by $5,000 per year after removing him from his position as Chair.**2** Because Crosby alleges that he is no longer being paid his "full salary" for his services as Chairman, *Garvie* is not on point. And even if "full salary" means the salary associated with Crosby's service as a tenured professor, Crosby's complaint also alleges that "a definite range of opportunities is no longer open to him" as a result of the defendants' actions. *Id.* (internal quotation omitted). Specifically, the complaint states that several other schools of public health have removed him from consideration for several administrative positions following the University's opaque and unfair investigation and Crosby's subsequent removal as Chairman. Thus, neither of the facts relied upon in *Garvie* as sufficient to defeat the plaintiff's claim are present in this case. Rather, *Garvie* actually supports a finding that Crosby's removal amounted to a "termination" for purposes of the first *Quinn* factor because his salary has been reduced and because he is no longer able to pursue his goal of serving as the dean of a school of public health. We should not construe the due process standards in such a parsimonious way that the employee is given no opportunity to show how seriously his reputation and career have been harmed.

The majority also suggests that Crosby's claim fails under the second *Quinn* factor because he is not foreclosed from serving as a professor. The proper inquiry is whether the employer's statements might "seriously damage his standing and associations in his community" or "impose 'on him a stigma or other disability that [would] foreclose[] his freedom to take advantage of other employment opportunities.'" *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)) (alterations original). This standard is only met when the statements impose "[a] moral stigma such as immorality or dishonesty." *Id.* This standard is disjunctive rather than conjunctive. Under *Ludwig*, a plaintiff satisfies the second *Quinn* factor when he or she alleges that the state employer's statements would tend to seriously damage his or her reputation in the relevant community. *Id.* Having made such a showing, there is no additional requirement that the plaintiff demonstrate that the remarks might "foreclose[] his [or her] freedom to take advantage of other employment

---

**2**We must accept those allegations for purposes of a motion to dismiss. *See Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Any dispute about the truth of that allegation is more appropriately resolved on a motion for summary judgment.

opportunities." *Id.* ("A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty."); *see also Roth*, 408 U.S. at 573 ("For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (internal quotation omitted)).

Crosby unquestionably meets that standard. Indeed, he alleges that the defendants sullied his professional reputation by accusing him of dishonesty, specifically. He also alleges that the defendants accused him of lacking personal integrity, respect for human dignity, personal responsibility, accountability, mutual respect, impartiality, and ability to collaborate. Taken as a whole, those accusations amount to a scathing indictment of Crosby's character that would damage any professional's standing and associations in his community. That the remarks have "foreclosed [Crosby's] freedom to take advantage of other employment opportunities" is established by the fact that their mere utterance has altogether removed Crosby from consideration for prestigious administrative positions at several other public health schools. *Roth*, 408 U.S. at 573; *see Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (noting that remarks labeling a plaintiff as inept, unethical, and untrustworthy "would undoubtedly damage the reputation of one in his position, and impair his future employment prospects").

The majority's reliance on Crosby's continued employment as a tenured professor at the University of Kentucky as support for its holding on the second *Quinn* factor is misplaced. The inquiry under the second *Quinn* factor focuses on the plaintiff's "*chosen* profession." *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996) (emphasis added). Despite the majority's blithe conclusion that Crosby's chosen profession is "being a professor," we must accept Crosby's consistent allegations that he has always had a different goal in mind: to become dean of a school of public health. Crosby has also made particularized allegations regarding the actual effect of the defendants' conduct on his applications for such positions at several peer institutions. The majority attempts to ground its reliance on Crosby's continued employment as a tenured professor by citing to *Baar v. Jefferson County Board of Education*, 311 F. App'x 817, 826 (6th Cir. 2009) (unpublished). That case involved a teacher who raised a liberty interest claim after receiving a written reprimand for violating an earlier agreement not to contact one of his colleagues. *Id.* at 819-20. We held that the teacher's claim failed because he failed to

request a name-clearing hearing, not because he continued to be employed by the defendant school district. *Id.* at 826. The *Barr* panel's dictum referring to the teacher's continued employment by the defendant school district was relevant because—unlike this case—the plaintiff had not alleged any career goals beyond his present teaching position. *Id.* at 826. Accordingly, *Baar* is not relevant to the case before us today. Crosby's essential allegation on the second *Quinn* factor is that the defendants' conduct has prevented him from pursuing his reasonable career goal of becoming dean of a school of public health. Indeed, he has made specific allegations about opportunities that he has lost as a result of the defendants' actions. I would hold that Crosby's allegations are more than sufficient to satisfy the second *Quinn* factor on a motion to dismiss.

Finally, I do not believe that the doctrine of qualified immunity protects the defendants in this case. The facts of this case are a textbook example of a scenario in which a state employer must afford a terminated employee a name-clearing hearing. As I discuss above, it has long been the law of this circuit that a state employee is due a name-clearing hearing upon request whenever the state employer makes statements indicting the employee's honesty when it terminates the employee or otherwise changes his legal status. *E.g.*, *Paul*, 424 U.S. at 711-12; *Constantineau*, 400 U.S. at 437; *Quinn*, 293 F.3d at 319; *Chilingarian*, 882 F.2d at 205.

There can be no reasonable debate as to whether Crosby's removal amounted to an "alteration of a right or status 'previously recognized by state law.'" *Quinn*, 293 F.3d at 319 (quoting *Paul*, 424 U.S. at 711). Before his removal, Crosby had a contractual right to a $5,000 yearly stipend for his service as Chairman; after his removal, he did not. This is the most basic example of a change in legal status. Similarly, there are no authorities to contradict the precedents in this court and the Supreme Court holding that an indictment of an individual's honesty is sufficient to trigger a name-clearing hearing in an appropriate scenario. *Roth*, 408 U.S. at 573 ("For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (internal quotation omitted)); *Ludwig*, 123 F.3d at 410 ("A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty."). Here, Crosby alleges that the defendants' actions and statements explicitly labeled him both dishonest and lacking integrity.

The supposed lack of clarity on those two issues is the result of the majority's desire for a case directly on point.  While the existence of such a case would make this panel's decision easier, its absence is not fatal to Crosby's claim.  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam).  It is sufficient that "existing precedent . . . place[s] the statutory or constitutional question beyond debate."  *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  The cases cited above clearly place both questions "beyond debate" on these facts when they are viewed in the light most favorable to Crosby.  Accordingly, I disagree with the majority's conclusion that the law on the first two *Quinn* factors is not "clearly established" under the doctrine of qualified immunity.

Crosby was terminated from his employment as the Chair of the Department of Health Behavior only one year into his five-year term.  None of the defendants informed Crosby—or this court, for that matter—of the identities of his accusers or of the nature of the allegations against him.  Defendant Sanderson went on to indict Crosby's character for honesty, among other things, in front of the faculty of the College of Public Health.  At no point did any of the defendants attempt to provide him with an opportunity to meaningfully respond to the substance of the allegations against him.  By Crosby's account, these events have rendered him *persona non grata* at several other peer institutions and have made any further professional advancement in his chosen field impossible.  Because I would hold that this is precisely the type of case in which the Fourteenth Amendment requires a name-clearing hearing, I respectfully dissent.