NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0055n.06

No. 22-3915

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

TERPSEHORE MARAS,

      Plaintiff-Appellant,

P.M., a minor, by and through her parent, Terpsehore Maras,

      Plaintiff,

v.

MAYFIELD CITY SCHOOL DISTRICT BOARD OF EDUCATION; RON FORNARO, in his individual and official capacities as a member of the Mayfield City School District Board of Education; SUE GROSZEK, in her individual and official capacities as a member of the Mayfield City School District Board of Education; AL HESS, in his individual and official capacities as a member of the Mayfield City School District Board of Education; GEORGE J. HUGHES, in his individual and official capacities as a member of the Mayfield City School District Board of Education; JIMMY TERESI, in his individual and official capacities as a member of the Mayfield City School District Board of Education; DR. MICHAEL J. BARNES, in his individual and official capacities as Superintendent of the Mayfield City School District,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Feb 06, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Terpsehore Maras and her school-aged daughter sued their local school district to enjoin the mask mandate it imposed during the COVID-19 pandemic. Maras lacked counsel. The district court thus dismissed the suit because it refused to let her represent her daughter. On appeal, the parties debate weighty questions about when parents who cannot afford lawyers may sue to protect their children's rights. But we need not answer those questions. The school district has since rescinded its mask mandate, and Maras's daughter has now graduated from high school. So this case is moot. We affirm the dismissal on that alternative ground.

I

Maras's daughter, P.M., attended a public school within the Mayfield City School District in northeast Ohio during the COVID-19 pandemic. In September 2020, the District's school board adopted a policy that, with limited exceptions, allowed its superintendent to require staff, students, and visitors "to wear appropriate face masks/coverings on school grounds" during "times of elevated communicable disease community spread[.]" Policy, R.1-7, PageID 35.

On August 20, 2021, at the start of the next school year, the superintendent alerted the school community that the District would implement this mask mandate for the 2021–2022 school year. Five days later, the five-member board and interested parties discussed this mandate at a board meeting. Although the board questioned whether Maras could speak at the meeting, it eventually allowed her to do so. The board nevertheless adopted the mandate over Maras's objection.

The next month, Maras filed this suit on behalf of herself and her daughter against the school district, its superintendent, and its board members (whom we will refer to collectively as the "District"). Maras alleged that the District violated federal and state procedural due-process requirements by imposing the mask mandate for the 2021–2022 school year without providing an

adequate "opportunity for public discussion." Compl., R.1, PageID 23, 25. She also alleged that the District's mandate violated federal and state substantive due-process limitations on state action.

Maras immediately moved for a temporary restraining order to enjoin the mask mandate. The court held a hearing and allowed Maras to argue her position. But it denied her motion. *P.M. ex rel. Maras v. Mayfield City Sch. Dist. Bd. of Educ.*, 2021 WL 4148719, at *4 (N.D. Ohio Sept. 13, 2021). When doing so, the court found it "questionable" whether Maras could litigate this suit on behalf of her daughter without an attorney. *Id.* at *3.

After this decision, the parties filed several pleadings. Continuing to represent P.M., Maras amended her complaint to add claims under the Ninth and Tenth Amendments. The District moved to dismiss her new complaint. It argued that Maras, a nonlawyer, could not represent her daughter and that her claims failed on their merits anyway. With this motion pending, Maras moved to file a second amended complaint and for the appointment of counsel.

The district court resolved these motions in a single order. It granted the District's motion to dismiss, holding that Maras could not represent P.M. This resolution, the court reasoned, allowed it to avoid the constitutional merits because Maras seemed to bring all of her claims solely on her daughter's behalf. The court also denied Maras's motion to file a second amended complaint on the same ground. The court lastly declined Maras's request for the appointment of a lawyer.

After obtaining counsel on her own, Maras appealed. Her lawyer raised three arguments on appeal: that the district court should have given Maras more time to obtain counsel; that it overlooked Maras's pursuit of her own claims (not just her daughter's); and that the law should allow her to protect her daughter's rights.

The parties' briefs raise important questions about the ability of parents with limited means to vindicate the constitutional rights of their children. In opinions with little discussion, we have held that non-lawyer parents generally may not represent their children. *See Cavanaugh ex rel. Cavanaugh v. Cardinal Loc. Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005), *abrogated on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). Another court, by contrast, has taken a more nuanced view of this subject. *See Raskin ex rel. JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 283–86 (5th Cir. 2023); *id.* at 288–99 (Oldham, J., dissenting in part and concurring in the judgment).

Yet oral argument revealed that this dispute might no longer present a live controversy. So we asked for supplemental briefing on mootness. This briefing has disclosed two developments since Maras sued the District. The District lifted its mask mandate in February 2022. And P.M. graduated from high school in June 2023.

## II

The Constitution gives us jurisdiction to exercise the federal "judicial Power" only over "Cases" or "Controversies." U.S. Const. art. III, § 2. A lawsuit must satisfy this case-or-controversy requirement from beginning to end. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). At the outset, plaintiffs must prove that they have "standing" by establishing three things: that they have suffered (or will suffer) an injury, that the defendants' conduct caused (or will cause) the injury, and that the requested relief will remedy it. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). These three requirements must continue to exist while plaintiffs prosecute their suit in the trial court and on appeal. *See id.* at 91. If new facts during the litigation eliminate the plaintiffs' injury or bar the court from granting any real-world relief, the

court must dismiss the case as moot. *See Davis v. Colerain Township*, 51 F.4th 164, 174 (6th Cir. 2022); *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc).

Courts tailor these standing and mootness requirements to the relief that plaintiffs seek. *See Thompson v. Whitmer*, 2022 WL 168395, at *2 (6th Cir. Jan. 19, 2022). Consider a request for an injunction. If plaintiffs seek to enjoin the defendants' conduct, they must show that the harmful conduct will likely injure them in the future—not just that it has harmed them in the past. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983). A *forward-looking* injunction will do nothing to remedy a *completed* harm. *See id.* Next, even if the plaintiffs show this future injury at the start of their suit, the defendants might stop engaging in the conduct during the litigation. That voluntary choice can sometimes eliminate the plaintiffs' future injury and moot their request for an injunction. *See Already*, 568 U.S. at 91; *Davis*, 51 F.4th at 174. This type of mootness problem often arises when plaintiffs sue a government to challenge a law or regulation and the government decides to repeal the challenged law or regulation in the meantime. *See Davis*, 51 F.4th at 174; *Resurrection Sch.*, 35 F.4th at 528; *Thompson*, 2022 WL 168395, at *3.

That said, courts have long recognized the risk that defendants who have stopped their challenged conduct only to moot the case might restart their "old injurious ways" once the court dismisses the suit. *Davis*, 51 F.4th at 174–75; *see DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (per curiam) (citing cases). To prove that their voluntary cessation has mooted a suit, then, defendants must meet a demanding test. They must prove that it is "absolutely clear" that the challenged conduct cannot "reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

We have highlighted two questions to ask when deciding whether a government has satisfied this test. Question One: Has the government rescinded the challenged legal requirement

in a "formal" way? *Davis*, 51 F.4th at 175. If so, the case is more likely moot because that type of repeal makes it more difficult to reimpose the requirement. *See Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021). We, for example, found a free-speech challenge to a township rule barring "disrespectful" speech at board meetings moot after the board repealed the rule "in a formal 'legislative-like' meeting." *Davis*, 51 F.4th at 175.

Question Two: Did the government repeal the challenged requirement for a reason unrelated to the suit? *See id.* If so, the case is again more likely moot because this evidence shows that the government did not issue the repeal for a bad-faith reason to avoid judicial review. *See id.* In *Resurrection School*, for example, our en banc court found a challenge to a COVID-19-related mask mandate moot because the State lifted the mandate due to changed facts, including reduced COVID-19 case counts and increased COVID-19 vaccination rates. *See* 35 F.4th at 529.

We reach the same conclusion in this case. The District's school board voted to repeal its mask mandate in February 2022. It did so at a "legislative-like" board meeting, and the vote led to a "formal" change to the District's written policies. *Davis*, 51 F.4th at 175. More importantly, the District's decision to lift the mask mandate had nothing to do with Maras's case. The board issued the repeal months after Maras had sued and after the district court had held that her suit would likely fail. *See Resurrection Sch.*, 35 F.4th at 529. The board's decision also rested on changed facts. As the District's superintendent explained, the federal government had approved a COVID-19 vaccine for children, and the case counts "had fallen significantly." Barnes Aff. at 2. Given the availability of vaccines, the superintendent did not plan to recommend that the board reimpose the mandate again—whether or not COVID-19 case counts later rose. Since its repeal, moreover, the board has taken no action to reimpose the mandate.

If anything, this case has an added fact that makes it easier than *Resurrection School*. Even when a school policy or procedure remains in full force, our caselaw often treats a student's challenge to that policy or procedure as moot once the student has graduated. *See Yoder v. Univ. of Louisville*, 526 F. App'x 537, 543 (6th Cir. 2013); *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713–16 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc); *Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27–28 (6th Cir. 1987); *see also DeFunis*, 416 U.S. at 316–20. And here, Maras's daughter, P.M., graduated from high school in June 2023.

To be sure, the District's mask mandate applied not just to students but also to "visitors" who entered school grounds. Policy, R.1-7, PageID 35. So maybe Maras or her daughter could have retained a sufficient stake in this suit if the mandate remained in place and they planned to continue visiting a school in the District. *See Washegesic v. Bloomingdale Pub. Schs.*, 33 F.3d 679, 681−83 (6th Cir. 1994). But we need not decide whether P.M.'s graduation *alone* rendered the request for injunctive relief moot. At the least, this development makes it even more "reasonable" to conclude that the District's repeal of the mandate has eliminated any potential future harm that the mandate might cause Maras or her daughter. *Resurrection Sch.*, 35 F.4th at 528 (citation omitted). In addition, a constitutional challenge to a school district's mask mandate by a mere visitor (who voluntarily enters school grounds) might present a different type of "legal controversy" than the same challenge by a student (who must attend school). *Id.* at 529. In sum, the combination of the mandate's repeal and P.M.'s graduation has rendered this case moot.

Maras resists this conclusion on three grounds. *First*, she argues that her complaint asked for damages and that this request keeps her constitutional claims alive. She is right on the law: Courts must decide mootness and standing issues on a remedy-by-remedy basis. *See Davis*,

5 F.4th at 171; *Thompson*, 2022 WL 168395, at \*2, \*4. So even if the District's repeal of the mandate mooted a request for injunctive relief for a future harm, it would not moot a request for monetary relief for a past harm. *See Thompson*, 2022 WL 168395, at \*4; *see also Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387−88 (6th Cir. 2005).

But Maras is wrong on the facts: her amended complaint nowhere requested damages. In its "prayer for relief," this complaint asked the district court to enjoin the District from enforcing the mandate and to declare the mandate unconstitutional. Am. Compl., R.19, PageID 518−19. It did not request money for prior injuries. And just as a request for damages does not suffice to seek an injunction, *see Crosby v. Univ. of Ky.*, 863 F.3d 545, 558 (6th Cir. 2017), so too a request for an injunction does not suffice to seek damages. Confirming our reading of the complaint, Maras disclaimed seeking damages at the temporary-restraining-order hearing: "I'm not suing the school district for money." Tr., R.33, PageID 860.

Maras counters with stray references to the word "damage" or "harm" in her amended complaint. In one paragraph, the complaint alleged that Maras was "aggrieved" by the "injury, loss, and damage suffered by P.M." from the mask mandate. Am. Compl., R.19, PageID 511. In other paragraphs, Maras alleged that she and her daughter had been "harmed" by the mandate. *Id.*, PageID 512–13, 517. Yet nobody would read these generic allegations in the complaint's "facts" section as a request for damages against the District or its officials. So the allegations did not give proper notice to the defendants that they might face financial liability. *Cf. Shepherd*, 313 F.3d at 967–68; *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). All told, Maras's belated damages request designed merely "to avoid otherwise certain mootness" cannot keep this suit alive. *Arizonans for Official English*, 520 U.S. at 71.

*Second*, Maras argues that the District has the power to reimpose the mask mandate "at any time[.]" Appellant's Supp. Br. 5–6. Yet Maras cites no objective evidence suggesting that the District will do so. To the contrary, the superintendent stated under oath that the availability of vaccines has eliminated the need for the mandate. And Maras's mere "speculation" that the District may someday reimpose the mandate does not alone suffice to withstand a mootness finding. *Thomas*, 996 F.3d at 328; *see also, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).

*Third*, Maras argues that her suit is not moot because "she is still a member of the community and has an interest in the policies enacted by the school board[.]" Appellant's Supp. Br. 6–7. But her status as a "concerned" Mayfield citizen does not give her the right to sue the local government to vindicate her "value interests." *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)). Instead, she must identify a future harm arising from the policies that she challenges. *Diamond*, 476 U.S. at 66–67. She cannot do so now that the District has repealed its mask mandate and her daughter has graduated.

This case is moot. We thus affirm the district court's dismissal on that alternative ground.